KAVAKOS et al. v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES (two cases).

Nos. 6692, 6693.

United States Court of Appeals for the District of Columbia.

Argued Dec. 9, 1936.

Decided Dec. 21, 1936.

Michael F. Keogh, Leonard A. Block, and Lawrence Koenigsberger, all of Washington, D. C., for appellants.

T. Hardy Todd and Joseph T. Sherier, both of Washington, D. C., for appellee.

Before MARTIN, C. J., and ROBB, VAN ORSDEL, and GRONER, JJ.

PER CURIAM.

Appellants are the beneficiaries named in two policies of insurance issued by the Equitable Life Assurance Society on the life of Pete Kavakos. The policies are dated December 19, 1932, and January 4, 1933. To each is attached the application for the policy, and each policy provides that the policy and application constitute the entire contract between the parties.

Part 2 of each application, consisting of questions and answers, relating to the health and medical history of the applicant, was signed by the applicant and contained an agreement that the answers should form part of the policy contract.

Question 9 was: "State every physician or practitioner whom you have consulted or who has treated you during the past five years. (If none, so state.)" Kavakos answered this question, "No." But the undisputed evidence shows that he had consulted and been treated by three physicians during the three-year period immediately preceding the date of the applications. One physician had treated him five times in May, 1929, and an unnamed number of times between September, 1931, and November, 1932; another had treated him eighty times between August 16, 1930, and July 13, 1931; and still another, nine times between August 6, 1931, and October 22, 1931. Kavakos died of pulmonary tuberculosis about eleven months after the policies were issued.

The insurance company defended on the ground of false representations made in the applications and offered to return the premiums paid, with interest. At the conclusion of all the evidence the trial court instructed the jury to find a verdict for the defendant; and on a motion for a new trial the court said: "The defendant called as witnesses three physicians who testified that they had treated the insured on many occasions during the five years prior to the application—one of them having treated him not less than eighty times. The witnesses were not permitted to testify[1] as to the disease for which the insured was treated, and the plaintiffs offered no evidence to show the nature of the disease or that it was immaterial to the risk assumed by the defendant. In directing the verdicts, the court held that the information asked of the insured was material to the risk of insurance, that true and correct answer was required, that the answer made was false and misleading and related to a matter about which the insured could not reasonably have been mistaken."

We think the action of the court below was clearly right. The Supreme Court, in Mutual Life Insurance Company v. Hilton-Green, 241 U.S. 613, 622, 36 S.Ct. 676, 680, 60 L.Ed. 1202, dealing with a similar question, said: "Considered in most favorable light possible, the above quoted incor-

---

[1] Title 9, § 20, District of Columbia Code of 1929.

rect statements in the application are material representations; and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud." Precisely the same ruling has been made in the Federal Circuits whenever the question has been before the courts. See: Mutual Life Ins. Co. v. Hurni Packing Co. (C.C.A.) 260 F. 641; Keeton v. Jefferson Standard Life Ins. Co. (C.C.A.) 5 F.(2d) 183; Union Indemnity v. Dodd (C.C.A.) 21 F.(2d) 709, 55 A.L.R. 735; New York Life Ins. Co. v. McCarthy (C.C.A.) 22 F.(2d) 241; New York Life Ins. Co. v. Hunter (C.C.A.) 32 F.(2d) 173; Fountain & Herrington, Inc., v. Mutual Life Ins. Co. (C.C.A.) 55 F.(2d) 120; Atlantic Life Ins. Co. v. Hoefer (C.C.A.) 66 F.(2d) 464; New York Life Ins. Co. v. Stewart (C.C.A.) 69 F.(2d) 957; Jeffress v. New York Life Ins. Co. (C.C.A.) 74 F.(2d) 874; Prudential Ins. Co. v. Loewenstein (C.C.A.) 76 F.(2d) 479. And see, also, May on Insurance (4th Ed.) vol. 1, § 185, where the cases, both state and federal, are collected and where the established rule is said to be that: "The inquiry and answer [in the application for the policy] are tantamount to an agreement that the matter inquired about is material, and its materiality is not therefore open to be tried by the jury."

In New York, where there is a statute providing that all statements made in an application for a policy of insurance shall, in the absence of fraud, be deemed representations and not warranties, the court,[2] in discussing the rule applicable in circumstances such as we have here, said:

"Defendant was not compelled to insure the life of Cyril Keck. Before deciding whether it would accept the risk or not, the company was entitled to such information as it desired concerning the insurability of such life, and the applicant was bound to truthfully answer any question put to him by the company upon that subject. True an applicant for insurance is subjected to a physical examination by a medical examiner of the company; but that would only disclose infirmities and diseases with which he was suffering at the time, and, in some instances, not all of those. The medical history of an applicant, both as to present and past ailments and illnesses, is absolutely essential to enable an insurance company to intelligently pass upon the desirability of a risk. No part of such history is more important or material to the company than that relating to prior treatments by physicians. It is not for the applicant to decide whether the matter concerning which he has consulted a physician was serious or trivial. The insurance company is entitled to determine that question for itself. If, as was the case here, an insured can, by a false answer, deceive the insurance company, and keep from it information that he had been attended by a physician on three successive days less than nine months before he applied for the policy, and the company is thereby prevented from ascertaining the facts, and then, when it learns that the answer is false, it is precluded on the trial of an action to recover on the policy from showing the nature of the illness for which the insured was treated, because of an objection on the part of the beneficiary named in the policy, the way is made easy to defraud the company.

"The plaintiffs have produced no witnesses and have given no evidence to contradict Dr. Tucker's testimony * * * nor have they attempted to show that the insured was suffering on that occasion from a mere temporary or trivial upset, one which in no way affected his general health. There is no proof whatever to overcome the prima facie case made out by the defendant.

"The misrepresentation regarding medical attention by physicians, which was made by the insured in the instant case, was something which would naturally and reasonably influence the judgment of the defendant in deciding whether it would write this policy or not, or in fixing the premium to be paid, and was material to the risk as a matter of law, and it having been established by the uncontradicted and unimpeached evidence that such statement was false, the policy is void, and there can be no recovery thereon. [Citing cases.]"

As we have already pointed out, the undisputed evidence is that Kavakos was treated by physicians almost constantly for a period of two years immediately preceding the date of the applications. This was a fact within his own knowledge, and his answer to the question was a material inducement to the insurance company to issue the policies. And, being false,

---

[2] Keck v. Metropolitan Life Insurance Company, 238 App.Div. 538, 264 N.Y.S. 892, 895, affirmed without opinion 264 N.Y. 422, 191 N.E. 495.

it vitiated the policies "without furthei proof of actual conscious design to defraud."

There is no more settled rule—where there is no statute changing the common-law rule—than that a misrepresentation in such circumstances as we have here is material as a matter of law, and in those cases in which it is shown, it is the duty of the court to take the case from the jury.

There was no error in admitting testimony of the physicians that they had attended the deceased. Labofish v. Berman, 60 App.D.C. 397, 400, 55 F.(2d) 1022, 1025.

Affirmed.