# METROPOLITAN LIFE INS. CO. v. ADAMS.

## No. 179.

Municipal Court of Appeals for the District of Columbia.

May 5, 1944.

Arthur P. Drury, of Washington, D. C., for appellant.

Peter N. Chumbris, of Washington, D. C. (Walter M. Bastian, of Washington, D. C., on the brief), for appellee.

Before CAYTON and HOOD, Associate Judges, and CLAGETT, Associate Judge of the Municipal Court for the District of Columbia.*

---

* Sitting by designation, pursuant to the provisions of Code 1940, § 11—771, Apr. 1, 1942, 56 Stat. 194, Ch. 207, Par. 6.

CLAGETT, Acting Associate Judge.

This is an appeal from a judgment for $1,000, entered on the verdict of a jury in favor of appellee—plaintiff in the trial court—who sued as the beneficiary of an insurance policy upon the life of her deceased husband.

Two principal assignments of error are relied upon by appellant: first, that the trial judge refused to direct a verdict in its favor; and, second, assuming that the case should have gone to the jury, that the trial judge erred in failing to instruct the jury upon all the issues raised by the pleadings and evidence.

The undisputed evidence was that the insured died at his home in Washington, D. C., on April 27, 1942, and that the cause of death was coronary occlusion, due to coronary sclerosis. The policy was issued on August 8, 1941. Attached to and made a part of the policy was an application in the usual form signed by the insured on August 4, 1941. At the trial the issues were narrowed to whether the policy was voided by the written answers made by the insured to Questions 16(a), 18, and 23 of the application. These questions and answers were as follows:

"16(a). Have you ever been told that you had any heart trouble?"

(Answer) "No."

"18. Have you ever had any of the following complaints or diseases?

"Apoplexy, Appendicitis, Asthma, Bronchitis, Cancer or other Tumor, Consumption, Diabetes, Disease of Heart, Disease of Kidneys, Disease of Liver, Disease of Lungs, Fistula, Fits or Convulsions, Goitre, Habitual Cough, Insanity, Colic, Jaundice, Paralysis, Pleurisy, Pneumonia, Rheumatism, Scrofula, Syphilis, Spinal Disease, Spitting of Blood, Varicose Veins. If yes, give particulars, dates and duration."

(Answer) "No."

"23. What clinics, hospitals, physicians, healers or other practitioners, if any, have you consulted or been treated by, within the past five years? If none, so state."

(Answer) "Don't remember when last ill."

The position of appellant throughout the trial and on this appeal has been that the answer to each of the foregoing three questions was false, was made with intent to deceive, or materially affected the acceptance of the risk or the hazard assumed by the company.

In support of that position, appellant relied upon the following evidence: Appellee, beneficiary under the policy, submitted proofs of death following the death of her husband, showing, among other things, that the cause of her husband's death was coronary occlusion, that in answer to the question, "When did the deceased first consult a physician for his last illness?" she had replied, "Consulted doctor about May, 1941," and that in answer to the question, "Names and addresses of all physicians who attended the deceased during his last illness and during three years prior thereto?" she answered, "Dr. A. Schwartzman, 1620 Sixteenth Street, N. W., about May, 1941." On cross-examination, appellee also testified that in May, 1941, insured was ill and Dr. J. Lewis Riggles and Dr. A. S. Schwartzman were called in on the same day to attend him and that both of these doctors also attended the insured on other occasions during May, 1941; that insured had been treated by Dr. T. C. McDougal in Illinois before coming to Washington. The testimony of Dr. McDougal was taken by deposition and showed that he was a physician in La Grange, Illinois, engaged in general practice, that the insured had consulted him and he treated insured on October 25, 1936, February 6, 1938, April 8, 1938, and May 9, 1939. Upon objection of plaintiff, the trial judge refused to permit the defendant to place before the jury the remaining questions and answers contained in this deposition on the ground that they were privileged, although they were later offered in evidence by appellee and received and read to the jury.

Dr. A. S. Schwartzman, a Washington physician, testified that he had treated the insured professionally during May, 1941, on several occasions, at home and on one occasion at the doctor's office. This doctor was then asked for what diseases he had treated the insured, whether the witness had advised the insured that he had heart trouble, what symptoms he had exhibited, and similar questions, but the trial judge sustained objections made on behalf of appellee that answers called for a disclosure of confidential information.

Mrs. Effa Powell, a sister of the insured, testified that in December, 1940, the insured and his wife and child came to live with her at her home, where they remained until June, 1941; that one day in May, 1941, the insured came home saying he was ill; that witness put him to bed and called

in Dr. Riggles, who examined him and told him that he must remain absolutely quiet and in bed and gave him a hypodermic. She also testified that after Dr. Riggles left the house she went to the basement to do some washing and while there heard a noise upstairs and found the insured lying on the bathroom floor with his feet against the door so it was difficult for her to get into the room. Her testimony also was that she and appellee were unable to carry the insured and that, therefore, witness had gotten a cab driver who assisted in putting the insured back to bed. She further testified that Dr. Riggles was then called but was unable to come and that Dr. Schwartzman had been called and examined the insured and told him he must remain in bed and be absolutely quiet. Both Dr. Riggles and Dr. Schwartzman treated the insured on other occasions during the following week or ten days, each attending the insured about three times. During these subsequent treatments, both Dr. Riggles and Dr. Schwartzman told the insured in her presence that he had a heart condition and that unless he took care of himself and stopped smoking and drinking he would not live a year. Appellee was not present when the doctors made these statements to the insured. The insured was in bed about ten days to two weeks after this attack and was weak, and at times had coughing spells. This witness further testified that the insured had told her that he had spells of fainting while in Illinois and on one occasion had cracked three ribs. She also testified that the insured had been in the Army but had been discharged because of a heart condition, and during the period between December, 1940, and May, 1941, while he was living at her house, he had often told her he knew he had a bad heart and he was not long for this world.

There was also received in evidence a certified copy of the original World War I draft registration card signed by the insured on June 5, 1917, at Martinsburg, West Virginia, containing, among other things, the following:

"Do you claim exemption from draft (specify grounds) ?"

(Answer) "Heart trouble."

As opposed to the foregoing evidence in behalf of appellant, appellee offered the following:

Appellee had never been told by Dr. Riggles or Dr. Schwartzman that the attack which the insured had in May, 1941, was a heart attack. She did not know for what illnesses or diseases the insured had been treated by those doctors, but she denied that the insured had ever had any kind of heart condition or heart trouble. Since his illness of May, 1941, the insured did not lose any time on account of illness. She did not testify regarding the statement of the insured's sister that following the visit of Dr. Riggles in May, 1941, the insured had been found lying on the bathroom floor and that appellee and the sister of the insured had been unable to carry the insured back to his bed, necessitating the calling of a taxi driver.

There was received in evidence Part C of the original application for insurance, executed by the insured, showing that the insured had been examined in connection with the application by Dr. E. C. Schneider on August 4, 1941, reciting in substance that at the time of such examination the insured's general appearance as to health was "good"; that the rate and quality of his pulse was "72 good"; that his pulse was not irregular or intermittent; that he had not found any evidence of disease or impairment of the heart; that the insured's blood pressure, systolic, was 120; diastolic, fourth phase, was 82; and diastolic, fifth phase, 80; that there was no evidence of arteriosclerosis. This same doctor testified at the trial in substance that he had examined the insured as shown by the application, found nothing wrong with him, and that he found his pulse, blood pressure, and heart good. On cross-examination he testified that the examination made by him of insured's heart was made only with a stethoscope and that with this means of examination only leakage of the valves or a heart murmur or some other involvement could be discovered; that a coronary occlusion would not be discovered by this form of examination; and that there was nothing inconsistent with his findings on the examination and the existence of a coronary occlusion at the same time.

Mrs. Nellie F. Barnett, a former trained nurse and resident-manager of the apartment house where insured died, testified in substance that the insured had lived there for about one year prior to his death and she saw him go out every day dressed in working clothes such as are worn by persons who do heavy work. He was a contractor and carpenter. When he would come in from work his clothes would be

dirty and he would walk upstairs to his apartment instead of using the elevator. To her knowledge insured was never ill when he lived at her apartment.

In behalf of the appellee there was received in evidence the portion of the deposition of Dr. McDougal to which objection had been made when offered by appellant. In substance this deposition showed that the doctor had treated insured in 1936, 1938, and 1939. On each occasion of treatment, insured was at home ill, being confined to his bed. On several occasions he had a temperature, a cough, and some pain in his chest, and on May 9, 1939, he had temperature and chills. Insured gave no history of previous medical treatment; he was not cooperative. On the first three occasions of treatment, in 1936 and 1938, witness was suspicious of some pulmonary pathology, such as tuberculosis, but, due to insured's lack of cooperation, this was never confirmed. Insured was weak and his color was not good. He had a chronic cough which could be associated with a heart condition but, due to the fact that he was always in bed, witness was unable to examine his heart after exercise. Witness had urged the insured to come to his office for laboratory tests, but he never came. On several occasions he had given the insured the usual treatment for influenza.

In an effort to attack the credibility of Mrs. Powell, the insured's sister, she was asked various questions on cross-examination and testified that she disliked appellee because the latter had had the insured cremated against the wishes of the witness. Witness had not seen appellee from the time the latter left the witness's home in May, 1941, until the day of the trial, except for the time when they met at the funeral parlor after the death of the insured. When insured went to work he wore an ordinary suit of clothes and not workingmen's clothes, and he never returned to the house any later than around 4:30 o'clock in the afternoon.

Because of the objections of appellee on the ground of privilege, one of the physicians who admittedly attended the insured on several occasions in May, 1941, at his home and on one occasion at the doctor's office was not permitted to testify what symptoms the insured had exhibited on those occasions, or the disease for which treatment was given, or whether the witness had advised the insured that the latter had heart trouble.

The case turns largely upon the effect of the Act of Congress approved June 19, 1934,[1] providing as follows:

"The falsity of a statement in the application for any policy of insurance shall not bar the right to recovery thereunder unless such false statement was made with intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the company."

■ Under this statute, in order to avoid such a policy for material misrepresentation on account of the answers to the questions in the application, the insurer has the burden of proof as to the elements indicated.[2]

### 1. Directed Verdict

The first question for decision is whether, under the facts of this case, a directed verdict should have been ordered for the defendant.

The usual case involving a directed verdict, is where the defendant makes such a motion on the ground that the plaintiff, who most frequently has the burden of proof, has not made a case sufficient to go to the jury. In some jurisdictions it is held improper for the judge to withdraw a case from the jury in favor of the party who has the burden of proof. Thus, in Maryland it has been decided that "where the burden is upon one to prove a fact, it is not for the court to say whether that burden has been met, and to withdraw a case from the jury, at the instance of him upon whom the burden rests."[3]

■ Such, however, is not the Federal rule nor the rule in many of the States. The rule in the Federal courts is that "it is the duty of the trial judge to direct a verdict for one of the parties when the testimony and all the inferences which the jury reasonably may draw therefrom will be insufficient to support a different finding."[4] The rule applies notwithstanding

[1] Code 1940, § 35—414.

[2] Prudential Ins. Co. v. Saxe, 77 U.S. App.D.C. 144, 134 F.2d 16.

[3] Travelers, Ins. Co. v. Connolly, 145 Md. 554, 125 A. 900, 905; Alexander v. Tingle, Md.1943, 30 A.2d 737.

[4] Chicago, M. & St. P. R. Co. v. Coogan, 271 U.S. 472, 46 S.Ct. 564, 566, 70 L.Ed. 1041.

the party introducing the evidence has the burden of proof.[5] The most familiar examples of such cases are those involving alleged contributory negligence in accident suits. In those cases the burden is on the defendant to prove the contributory negligence of the plaintiff. Directed verdicts for the defendant on this ground are frequent in the Federal courts.

Pullen v. Sun Life Ins. Co. of America, 74 App.D.C. 197, 121 F.2d 110, is a recent insurance case in which the defendant had the burden of proof and in which a directed verdict for the defendant was sustained.

■■■ The test to be applied has often been repeated by this and other courts.[6] As expressed by the Supreme Court in Gunning v. Cooley, (1930) 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720, it is as follows:

"Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury. And in determining a motion of either party for a peremptory instruction, the court assumes that the evidence for the opposing party proves all that it reasonably may be found sufficient to establish, and that from such facts there should be drawn in favor of the latter all the inferences that fairly are deducible from them. (Citations) Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury."

Tested by these standards, we have concluded that the refusal of the trial judge to direct a verdict for the defendant at the conclusion of the entire case was error. The testimony of insured's sister was that he had complained frequently of heart trouble and had been told by the two attending physicians in May, 1941, that he had heart trouble. Neither of these statements was contradicted by appellee, who only testified that *she* had not been told these facts. Considered alone, such testimony, depending upon the credibility of witnesses, should have been decided by the jury.

Other evidence, however, was not only uncontradicted; it was admitted. There was no denial, for example, that insured had claimed exemption from the draft in World War I on the ground that he had heart trouble. The only evidence that he was subsequently accepted for the Army came from his sister, who also testified that he was discharged because of heart trouble.

In the view we take of the case, however, the most important evidence had to do with insured's answer to Question 23. Asked what clinics, hospitals, physicians, healers or other practitioners, if any, he had consulted or been treated by within the past five years, insured answered: "Don't remember when last ill." This answer was given in early August, 1941.

■■■ The undisputed fact was that in 1936, 1938, and 1939 he was treated by a physician and was confined to his bed and that in May, 1941, approximately three months before he gave this answer on August 4, 1941, he had to be carried from the bathroom to bed and then that he had been attended several times by two different physicians, both at his home and at the office of at least one of the physicians. Appellee objected to one of the physicians' (the other was not a witness) testifying to what he treated insured for on those occasions, and the trial judge properly sustained the objection.[7]

Commenting on a similar situation, the United States Court of Appeals for the District of Columbia quoted with approval from the decision in Keck v. Metropolitan Life Insurance Company, 238 App.Div. 538, 264 N.Y.S. 892, 895, saying:

"If, as was the case here, an insured can, by a false answer, deceive the insurance company, and keep from it information that he had been attended by a physician on three successive days less than nine months before he applied for the policy, and the company is thereby prevented from ascertaining the facts, and then, when it learns that the answer is false, it is precluded on the trial of an action to recover on the policy from showing the nature of the illness for which the insured was treated, because of an objection on the part of the beneficiary named in

[5] Cf. First Nat. Bank & Trust Co. v. Heilman, 10 Cir., 62 F.2d 157. Cf. also 26 R.C.L., Page 1073.

[6] Washington Nat. Ins. Co. v. Stanton et al., D.C.Mun.App., 31 A.2d 680, and cases there cited.

[7] Kavakos et al. v. Equitable Life Assur. Soc. of the United States, 66 App.D. C. 380, 88 F.2d 762.

the policy, the way is made easy to defraud the company."[8]

The accepted rule is that the word "false" has two distinct and well-recognized meanings. It signifies (1) intentionally or knowingly, or negligently untrue, and (2) untrue by mistake, accident, or honestly after the exercise of reasonable care.[9] A suppression of the truth may amount to a suggestion of falsehood, and if, with intent to deceive, either party to a contract conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation. If a false impression is created upon the mind of the other party, it is unimportant whether the means of accomplishing it are false words or concealment or suppression of material facts.[10]

Here the insured, by stating, "Don't remember when last ill," created the impression on the ordinary, reasonable mind that his last illness necessitating treatment by a physician was so remote in time or so minor in character that he could not recollect it. Yet the undisputed evidence was that three months previously he was so sick that he had to be carried out of the bathroom and immediately thereafter was treated by two different physicians on not less than six occasions.

We conclude that the insured's answer to Question 23 was so inherently improbable and contrary to human experience as to make it false in fact and as a matter of law and was made with intent to deceive and, under the circumstances of this case the answer materially affected the acceptance of the risk and the hazard assumed by the company.

Appellee relies heavily upon the decision of the United States Court of Appeals for the District of Columbia in Prudential Ins. Co. v. Saxe, 77 U.S.App.D.C. 144, 134 F. 2d 16. That case, however, turned entirely upon the peculiar circumstances that, although the insured admittedly had been treated in a hospital and had denied such fact on his insurance application, very strong evidence was introduced showing that his hospitalization was a fake and was caused by his desire to keep associates from knowing he had been on a drinking spree.

Here appellee not only made no effort to explain the May, 1941, treatments; she prevented the truth concerning them being presented in court.

We hold, therefore, that the decision in Prudential Ins. Co. v. Saxe is not decisive of this case. We have examined the other cases cited by appellee and find them likewise inapplicable. It is to be noted particularly that both in the Saxe case and in Kaplan v. Manhattan Life Insurance Co. of N. Y., 71 App.D.C. 250, 109 F.2d 463, relied upon by appellee, the beneficiaries introduced evidence to show the treatments by physicians were either for trifling sicknesses or for no sickness at all.

### 2. The Judge's Instructions

Our conclusion that the trial judge should have directed a verdict for defendant disposes of this appeal, but in view of the necessity for a new trial we also discuss the Court's jury instructions. A party to a cause of action is entitled to have his theory submitted to the jury where supported by the evidence and the pleadings, and this makes it the duty of the Court to submit all such issues, both affirmative and negative.[11]

Here the trial judge, at the beginning of his instructions, correctly stated that "the defense is that the answers to Questions 16(a), 18, and 23 in the application for insurance were false, where made with intent to deceive, and materially affected either the acceptance of the risk or the hazard assumed by the defendant." Thereafter, however, he told the jury that to avoid the policy for material misrepresentation the defendant had the burden of proving the answers were false, were made with intent to deceive, or materially affected either the acceptance of the risk or the hazard assumed by the company *"and that this required a showing by the defendant that the insured had a disease of the heart and had been told and knew*

---

[8] Kavakos et al. v. Equitable Life Assur. Soc. of the United States, supra.

[9] United States v. Ninety-Nine Diamonds et al., 8 Cir., 139 F. 961, 2 L.R.A., N.S., 185.

[10] Stewart v. Wyoming Cattle Ranche Co., 128 U.S. 383, 9 S.Ct. 101, 32 L.Ed. 439.

[11] Reid's Branson "Instructions to Juries," 3d Edition, Vol. 1, Page 155, and cases there cited; see also cases cited in majority and dissenting opinions in Sherman v. United States, D.C.Mun.App., 36 A.2d 556.

he had a disease of the heart." (Emphasis supplied.) The same instruction was repeated three times in slightly different form. The jury was not told that if they believed the answer to the question regarding the attendance of physicians was false and was made with intent to deceive or unless such answer materially affected either the acceptance of the risk or the hazard assumed by the company that also would void the policy. This was clearly an issue in the case, both under the pleadings and under the evidence. Counsel for appellant objected to the failure of the judge to charge the jury on the point. We have examined the instructions as a whole to determine whether the general language employed supplied this deficiency. We have concluded that it did not.

The judgment is reversed, with instructions to award a new trial.

Reversed.