Larry HAUBNER, a/k/a Loras Haubner,
Appellant,

v.

**AETNA LIFE INSURANCE CO.,**
a corporation, Appellee.

**No. 4366.**

District of Columbia Court of Appeals.

Argued Dec. 10, 1968.

Decided Aug. 7, 1969.

Dexter M. Kohn, Washington, D.C., for appellant. Coleman L. Diamond, Washington D.C., also entered an appearance for appellant.

John L. Laskey, Washington, D.C., for appellee.

Before HOOD, Chief Judge, and MYERS and KERN, Associate Judges.

KERN, Associate Judge:

Appellant is the guardian of the minor son of Donna Henika who purchased from appellee in January, 1963, an insurance policy on her life in the amount of $10,000 and named her son beneficiary thereunder. When she died, appellee refused to pay the proceeds of the policy to the beneficiary on the grounds that (1) the first premium had not been paid during the good health of the insured as required by the express terms of the policy and (2) the insured had omitted from her application for the policy material facts which, if known by appellee, would have caused it not to issue the policy. A jury found for appellant in the amount of the policy but the court entered judgment notwithstanding the verdict in favor of appellee.

The evidence may be summarized as follows. In October, 1953, the insured developed a small tumor in her left breast which was cancerous. Dr. Putzki, a surgeon specializing in breast operations, performed a radical mastectomy which is the removal of the entire breast and the glands and muscles in the surrounding area in order to prevent the spread of the malignancy to other parts of the body. Such an operation is never performed when the tumor is benign. Mrs. Henika was told by the surgeon that her tumor had been malignant and she received post-operative radiation therapy.

On December 7, 1962, the insured consulted a physician specializing in gynecology and underwent a Pap smear which is a routine examination for cancer. She complained to him at this time that she was suffering from periods of blurred vision and numbness on the right side of her face. The doctor noted that she was so upset as to be in his opinion unstable and he had difficulty understanding her. He referred her to Dr. McInerney, a specialist in internal medicine, who saw her on December 13, 1962. He noted her past history and present symptoms and concluded that her symptoms might not relate solely to her vision but could have overall medical significance. She was "very much concerned and alarmed" about her health. She returned again on December 15th for further examinations and studies. In the meantime, she had consulted an ophthalmologist and gone to the "eye clinic" at Johns Hopkins.

On January 3, 1963, the insured underwent X-rays of her chest and skull at the direction of the internist. These X-rays revealed shadows indicating a cancerous condition in her lungs and the radiologist so reported to Dr. McInerney on that day or the next, although he said nothing to the insured. She was examined again on January 7th by Dr. McInerney at which time he found an enlargement of the lymph glands and concluded that there was a recurrence of cancer. He did not tell her of this but prescribed for her a medicine used for treatment of cancer and referred her to Dr. Lewison at Johns Hopkins who is a specialist in the treatment of malignant diseases. He began seeing her in February, 1963, and concluded that the cancer had spread to her brain. The insured died of convulsions in July, 1963.

On January 3, 1963, she had applied to appellee for life insurance. On January 5th, she filled out a one-page form for appellee's medical examiner and was examined by him at her home. The pertinent

questions in the form and her answers thereto are as follows:

Have you had regular or occasional health examinations? Yes.

Date of last? *July 1962.*

By Dr.?                    *Telephone Co. Clinic.*

When and for what reason did you last consult a physician. *Civil Service Medical Exam* (5th & E St., N.W., Wash., D.C.) Oct. 1962.

Have you ever consulted a physician * * * or suffered from any ailment or disease of: Enlarged Glands, Tumors, Goitre, or Ulcers? Yes. Benign tumor left breast. Dr. Putzki—Wash., D.C. Excised left breast—1952.

Are there any tumors in the breast or any other part of the body? Yes. *Benign* breast tumor excised 1952. (Emphasis supplied.)

It may be seen that the insured suppressed all information concerning the fact that she was at that very time consulting a series of doctors and undergoing tests, examinations and X-rays to determine the cause of the symptons which were so alarming her. It may also be seen that the insured placed the date of her tumor as 1952 when the surgeon who attended her positively stated it was 1953 and she described the tumor as benign when in fact she had been told that it was malignant.

The applicable statute [1] provides that a false statement in the application for an insurance policy bars recovery under the policy if it "was made with intent to deceive" or it "materially affected either the acceptance of the risk or the hazard assumed by the company".

■■■ "A misstatement to be material to the hazard assumed must be shown in some way to have affected it or contributed to the loss, and in a substantial manner." Prudential Ins. Co. of America v.

Saxe, 77 U.S.App.D.C. 144, 156, 134 F.2d 16, 28 (1943); Cf. Jannenga v. Nationwide Life Ins. Co., 109 U.S.App.D.C. 385, 388, 288 F.2d 169, 172 (1961). It is clear that the facts suppressed by the insured concerning her consultations with and examinations by physicians prior to January 5th and her previous history of cancer affected in a substantial manner the hazard assumed by appellee and would certainly have influenced appellee's decision to insure her. Therefore, the court below could correctly find as a matter of law that the false statements by the insured were material to the issuance of the policy. Kavakos v. Equitable Life Assur. Soc'y., 66 App.D. C. 380, 88 F.2d 762 (1936); Kaitlin v. Metropolitan Life Ins. Co., D.C.Mun.App., 65 A.2d 188 (1949).

■■■ Appellant earnestly argues that appellee waived its defense to liability under the policy. He points to the fact that the doctor who examined the insured on behalf of appellee prior to issuance of the policy noted in his report that her left breast had been removed ten years before and to the testimony that the removal of a breast is performed only when the tumor is malignant and that the reappearance of cancer ten years after such an operation is "not unusual". Appellant contends that the examining doctor knew or should have known that contrary to the insured's statement in her policy application she had had cancer in 1953 and that a recurrence of that malignancy in the future was a definite possibility. Nevertheless, appellee's doctor evaluated the insured as an "excellent" risk and appellee sold her a policy on her life. Therefore, according to appellant, appellee cannot deny liability upon the insured's death from cancer directly stemming from her breast cancer according to the medical testimony at trial since it issued the policy with the knowledge that this might occur.

There would be merit to appellant's contention if the insured's false statements had been made only with reference to her

1. D.C.Code 1967, § 35–414.

1953 tumor. However, she also made misstatements in her policy application as to the dates and occasions of her most recent medical examinations and omitted altogether the crucial information that she was then consulting physicians and undergoing tests. In view of Mrs. Henika's past medical history of cancer, the information concerning her present consultations was clearly material to the issuance of a life insurance policy and her failure to reveal such information to appellee was sufficient cause to justify its refusal pursuant to the statute to pay the proceeds of the policy. Metropolitan Life Ins. Co. v. Adams, D.C. Mun.App., 37 A.2d 345, 350 (1944).

■ Appellant argues that appellee was put on notice that something was amiss by the discrepancy existing between the description in her application of her breast tumor as "benign" and the finding by appellee's doctor that her breast had been removed which clearly demonstrated that the tumor must have been malignant. He urges that appellee's failure to investigate further by at least contacting Dr. Putzki, the surgeon who performed the operation and who was identified in the policy application, constituted a waiver on the part of appellee.

Even though appellee might have surmised that the breast tumor excised by Dr. Putzki was malignant and might have discovered by talking to him that the operation had been performed in 1953 instead of 1952 as reported by the insured, it could not have learned anything from Dr. Putzki concerning all of the symptoms which had so distressed decedent in late 1962 and early 1963 and the almost frantic consultations with three doctors and a radiologist prior to January 5, 1963. Dr. Putzki knew nothing about them and Mrs. Henika had suppressed all the information with regard to them which should have been revealed by her in applying for the policy. So far as appellee's doctor knew or could have known, the insured had had a malignancy in a breast removed in 1953, this operation had been a success and she had been in good health and had consulted doctors during the ten years prior to January 5, 1963, only for routine matters.

■ Appellant also argues that since appellee made an independent inquiry by means of a medical examination and a series of form questions directed to her it was in a position to ascertain the true facts before insuring her and its failure to do so waived whatever defense it had. We think it would be unreasonable to conclude that appellee's doctor should or could have uncovered insured's cancer in one examination without benefit, so far as the record shows, of her present symptoms when it required a battery of tests and a series of examinations over a period of weeks before the insured's physicians with her anxious and complete cooperation were able to make a firm diagnosis.

■ An insurer has an obligation of course to make reasonable efforts to ascertain the true facts prior to accepting an application for insurance but the applicant also is obliged to disclose information which he knows is material and relevant to the insurer's ultimate decision to insure. See Stipcich v. Metropolitan Life Ins. Co., 227 U.S. 311, 316, 48 S.Ct. 512, 72 L.Ed. 895 (1928). In the instant case the insured read and executed her policy application which contained the following statement:

> I hereby certify * * * that no material circumstance or information has been withheld or omitted concerning my * * * present state of health. * * *

Mrs. Henika's visible alarm amounting almost to hysteria makes it clear that she did not consider the consultations and tests which she was undergoing as routine or her ailments minor.

We conclude under the circumstances that the trial court correctly entered judgment in favor of appellee and that judgment must be and is

Affirmed.