Louise M. BLAIR, Appellant,

v.

INTER–OCEAN INSURANCE COMPANY.

No. 77–1657.

United States Court of Appeals, District of Columbia Circuit.

Argued March 31, 1978.

Decided Dec. 22, 1978.

Eugene J. Fitzpatrick, Rockville, Md., with whom Melvin M. Feldman, Rockville, Md., was on the brief, for appellant.

Roger E. Warin, Washington, D. C., for appellee.

Before LUMBARD,* Senior Circuit Judge for the Second Circuit, and MacKIN-NON and WILKEY, Circuit Judges.

Opinion for the court PER CURIAM.

PER CURIAM:

Appellant, Louise M. Blair, brought an action based on diversity jurisdiction to recover the $40,000 proceeds of a life insurance policy issued to her deceased husband four months before his death of portal cirrhosis of the liver, and for consequential damages flowing from appellee's, Inter-Ocean Insurance Co., refusal to pay the policy. Inter-Ocean was granted summary judgment on the grounds that appellee was excused from paying off its policy because the deceased both at the time of his application for insurance and thereafter before the policy was actually issued, had, as a matter of law, materially misstated his medical history in respects that materially affected the acceptance of the risk and the hazard assumed by the insurer. We find no error in the district court's ruling and affirm its judgment.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

As part of his application for insurance, the deceased, Daniel R. Blair, was required to provide information requested on a company medical form, "Answer Made to the Medical Examiner." In his answers to this questionnaire, Mr. Blair disclosed that he had a history of diabetes, but when specifically asked whether or not he had ever had or consulted a physician concerning any "Stomach or Intestinal Trouble, Indigestion, Ulcers, Appendicitis, Gall Bladder or *Liver Disorder,* Jaundice, Dysentery or Hernia," (emphasis added) he replied with an unqualified "no." In fact, shortly before he gave that answer the deceased had been hospitalized for some six days during which he had been diagnosed as suffering from cirrhosis of the liver. In addition to concealing this diagnosis from appellee, in response to an inquiry on the medical form asking for the full details of any hospitalization during the past five years, Mr. Blair neglected to mention this confinement, although it had occurred only four months before he applied for insurance. Furthermore, during the period between the deceased's application in March, 1974, and the issuance of the policy in June, 1974, Mr. Blair *again* required hospitalization for his cirrhotic liver, which at this point was producing symptoms—bleeding esophageal varices—suggestive of a rapidly deteriorating condition. Although the terms of his insurance required the applicant to inform Inter-Ocean of any hospitalization subsequent to the submission of his application for insurance and prior to its issuance, Mr. Blair did not inform Inter-Ocean of this hospitalization.

The appellant does not dispute these facts, but instead contends that since the deceased did disclose his diabetic condition, and his physician in answering a Special Diabetes Questionnaire commented that the deceased had developed "peripheral neuritis"[1] and characterized the risk of insuring Mr. Blair as "moderately severe," the insurance company was put on notice of the possibility of liver disease. Given such notice, appellant further contends that Inter-Ocean should in the exercise of due diligence have discovered deceased's true medical condition; and that since appellee issued the disputed policy despite notice of "facts of such a nature as to require further inquiry by insurer" (Appellant's Brief at 8), it allegedly is estopped from denying the validity of the insurance.

One need only examine the responses given by deceased's doctor to the Special Diabetes Questionnaire to appreciate the frivolous nature of the claim that knowledge of Mr. Blair's diabetes and peripheral neuritis should have led the appellee to inquire into the possibility of liver disease. Nowhere on this form, including the final section requesting general "Remarks," is there any hint that deceased was suffering from cirrhosis.

Liver disease may well be, as appellant contends, a possible result of diabetes (although Mr. Blair's own physician who had treated diabetics all his professional life had apparently never seen a case where the latter disease led to the former), but it can hardly be said that Inter-Ocean—having received deceased's sworn statement disclaiming any liver disorder and two medical reports neither of which referred to any disease related to that organ—was put on a duty of inquiry into the condition of Mr. Blair's liver.[2] Numerous cases in which the information given to an insurance company was far more suggestive of serious illness than that which the deceased chose to divulge to Inter-Ocean have found that the insurer was not on a duty of investigation as to the possibility of such illness, *e. g., Rutherford v. John Hancock Mutual Life Insurance Co.,* 562 F.2d 290 (4th Cir. 1977); *Fleet Messenger Service v. Life Insurance Company of North America,* 315 F.2d 593

---

1. Peripheral neuritis is defined as "inflammation of the nerve endings or terminal nerves," Dorland's Medical Dictionary 1039 (25th ed. 1974), which can lead to loss of reflex and some loss of weight, but certainly could not be considered a threat to life itself.

2. Decedent's cirrhosis was not in fact caused by diabetes but by excessive consumption of alcohol.

(2d Cir. 1963) (per Lumbard, C. J.); *Haubner v. Aetna Life Insurance Co.,* 256 A.2d 414 (D.C.App.1969). We see absolutely no basis for imposing such a duty on appellee in this case.

The district court's grant of summary judgment in favor of the appellee was entirely proper, regardless of whether or not the intent with which decedent made the misrepresentations was an issue upon which testimony should have been taken, because, even if unintentional, these misrepresentations without doubt materially affected the hazard assumed by the company and its decision to accept the risk of insuring Mr. Blair. Under both District of Columbia and Maryland law, such a material misrepresentation is grounds for abrogating the policy of insurance, D.C.Code § 35–414 (1973) [3]; Md.Code Ann. Art. 48A, § 374 (1972),[4] and Inter-Ocean's underwriting manual explicitly states that it will not write life insurance of any kind for individuals suffering from active cirrhosis of the liver. Whether or not Mr. Blair's cirrhosis was "passive" at the time he applied for insurance, it certainly gave signs of being "active" when he was rushed to the hospital for treatment three weeks before the issuance of the policy.[5] Given the directives of appellee's underwriting manual, it is clear that had deceased not misrepresented the condition of his health, no policy would have been issued to him. We accordingly affirm the grant of summary judgment for Inter-Ocean.

*Affirmed.*

3. D.C.Code § 35–414 provides:
   The falsity of a statement in the application for any policy of insurance shall not bar the right to recovery thereunder unless such false statement was made with intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the company.
   *See Jones v. Prudential Insurance Co.,* 388 A.2d 476 (D.C.App.1978) (insured falsely stated that she was not a heroin addict; held that this misrepresentation precluded recovery on the policy under § 35–414 because "the misrepresentation would affect the company's acceptance of the risk . . ..") *Cf. Taylor v. Time Insurance Co.,* 583 F.2d 743 (5th Cir. 1978).

4. Md.Code Ann. Art. 48A, § 374 provides:
   All statements and descriptions in any application for a life or health insurance policy or annuity contract, or for the reinstatement or renewal thereof, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties.. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under such policy or contract unless either:
   (1) Fraudulent; or
   (2) Material either to the acceptance or the risk, or to the hazard assumed by the insurer; or
   (3) The insurer in good faith would either not have issued, reinstated, or renewed the policy or contract, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.
   We have considered the applicable statutes in both states to avoid any dispute regarding which law governs.

5. The second hospitalization in Intensive Care occurred on May 13th and the policy was issued on June 1st.