COLONIAL PENN INSURANCE
CO., Plaintiff,

v.

Sonya Laraye OWENS, Defendant.

Civ. A. No. 88–3670.

United States District Court,
District of Columbia.

Jan. 24, 1990.

Mary McGowan, Siciliano, Ellis, Dyer & Boccarosse, Washington, D.C., for plaintiff.

Harold D. Martin, Robert A. Ades & Associates, P.C., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

REVERCOMB, District Judge.

Plaintiff Colonial Penn Insurance Company filed a complaint for declaratory judgment against Defendant Sonya Laraye Owens to determine whether it is liable to defend and cover Defendant for a death claim arising out of an automobile accident which occurred in the Third Street Tunnel in the District of Columbia at 5:30 on the morning of July 23, 1988. This matter is before the court pursuant to Plaintiff's Motion for Summary Judgment.

### I. STATEMENT OF FACTS

On July 20, 1988, Defendant came to the Keystone Insurance Agency in Hillcrest Heights, Maryland and applied for automobile liability insurance coverage through the Assigned Risk Program of the District of Columbia Automobile Insurance Plan (the Plan) which had been promulgated pursuant to the Compulsory/No–Fault Motor Vehicle Insurance Act of 1982 (the Act). D.C.Code § 35–2101 *et seq.* Defendant spoke with Brent Molovinsky, president of Keystone, and applied for coverage with a $500 deductible. After taking Defendant's

application Molovinsky accepted Defendant's premium check for $365 and in turn issued a binder to Defendant bearing number DC0720B88. The last five digits of the binder number reflected the date the application for insurance was signed. However, on the following day, July 21, 1988, before Molovinsky mailed Defendant's application for insurance coverage to the Manager of the Plan for assignment, the Defendant called Molovinsky and told him that she wanted to change the terms of her policy application, specifically, to eliminate Personal Injury Protection (PIP) benefits, and that she would come into the agency to effect those changes.[1] Molovinsky's affidavit states that the Defendant instructed him not to deposit or cash the check and to "hold the application." Although Defendant in her deposition denies that she told Molovinsky to "hold the application," she does not dispute that she told him not to deposit or cash the check. Molovinsky did not mail the application of July 20 but held it on his desk awaiting Defendant's return to the Insurance Agency.

The Defendant was involved in a fatal automobile accident before she ever returned to the Keystone Insurance Agency to change her policy application. At approximately 5:25 a.m. on Saturday, July 23, 1988, the Defendant was involved in an automobile accident in the Third Street Tunnel in the District of Columbia in which her vehicle struck and fatally injured James Ward who had been changing a tire on a disabled vehicle in the tunnel.[2]

Approximately nine hours after the accident, at 2:45 p.m. on July 23, 1988, the Defendant returned to the Keystone Agency where she met with John Dao, a licensed insurance broker and one of the Agency's salaried salespersons. Dao provided the Defendant with an application for automobile insurance coverage under the Plan which the Defendant was required to complete. Dao filled out the application with the information that the Defendant provided him.

In taking the information from the Defendant, Dao specifically asked Defendant the following question which was contained in section 9 of the application: "Has the applicant or anyone who usually uses the applicant's motor vehicle, been involved, either as owner or operator, in any motor vehicle accident during the past 36 months?" In response to this question the Defendant answered "none" and Dao accordingly wrote "None" in the appropriate blank provided on the application. In Dao's presence, the Defendant then read and signed the application form without ever having disclosed to Dao that she had been involved in the automobile accident with Ward nine hours earlier. Directly above the Defendant's signature the application form stated, under the heading "Applicant's Statement," that

> I declare and certify that ... (2) To the best of my knowledge and belief that all statements contained in this application are true and that these statements are offered as an inducement to the company to issue the policy for which I am applying (3) I realize that any misleading information or failure to disclose required information will not be considered good faith on my part and will prejudice my application for insurance.

The coverage terms of the application provided for bodily injury limits of $25,000/$50,000 per occurrence, $10,000 for

---

1. Molovinsky's affidavit provides that the Defendant further stated on the telephone that she wanted to reduce the amount of her deductible from $500 to $250. The Defendant does not dispute that she inquired about changing her deductible on the phone but contends that the conversation ended with the understanding that the Defendant "would wait until [she] found out who [her] insurance company was going to be before [she] changed [her] deductible."

    Molovinsky's affidavit further provides that the Defendant apprised him that she would come into the agency "before the end of the week." Although the Defendant's deposition denies that she provided a firm timeframe in which she would come into the agency to effect her requested change in PIP coverage, she admits that she "had to come into the office if [she] wanted to change [her] P.I.P. insurance."

2. On March 23, 1989, a civil suit was filed against the Defendant by the personal representative of the Estate of James Ward seeking damages for the death of Ward. See U.S.D.C. Civil Action No. 89–0763.

property damage, and a $250 deductible for collision coverage. The application form which the Defendant had signed stated in bold faced print, on page 2, that the effective date and time of coverage was July 23, 1988, at 2:45 p.m., and further stated in bold-faced print that **"IN NO EVENT SHALL COVERAGE BE EFFECTIVE PRIOR TO THE DATE AND HOUR OF COMPLETION OF THIS APPLICATION."**

The Defendant then gave Dao a check from her Sovran Bank account, numbered 475 and dated July 23, 1988, in the amount of $413.00 as an installment payment on the annual premium under the policy coverage for which the Defendant applied. Dao gave Defendant a document entitled "Insurance Binding Memorandum and Receipt." The issued binder bore the number 01693 72388 and stated that the effective date of coverage was July 23, 1988. (Again, the last five digits of the binder reflected the date the application for insurance was signed.)

Molovinsky forwarded Defendant's July 23, 1988 application and her premium check to the Manager of the Plan in Richmond, Virginia, and discarded the Defendant's July 20, 1988 application along with a copy of the binder that he had issued to Defendant on that date. Neither the Plan nor the Plaintiff ever received the July 20, 1988 application or its $365 premium check.

**3.** Section 35–2106 of the No–Fault Act provides for the creation of an Assigned Risk Plan whereby all insurers who sell voluntary insurance coverage within the District of Columbia are compelled to provide involuntary insurance coverage to "assigned risks," individuals who "are unable to obtain insurance reasonably through ordinary methods." § 35–2106(a).

The same statute empowers the Superintendent of Insurance to promulgate "a reasonable plan or plans to assure the availability, to all owners of motor vehicles, of the insurance required to be maintained and of the insurance required to be offered by this Chapter." Pursuant to section 35–2111(f), which directly authorizes the Superintendent of Insurance to "issue rules to expeditiously and economically administer this chapter," the Superintendent has created the Plan, the provisions of which are set forth in Title 26 of the District of Columbia Municipal Regulations at Chapter 6.

On July 25, 1988, Defendant telephoned Molovinsky and apprised him that she had been in the Keystone office on July 23, 1988, and had filled out an application and been issued a binder by Dao with an effective coverage date of July 23, 1988. She told Molovinsky that she had lost the original binder which he had given her pursuant to the first application and repeatedly requested that Molovinsky issue her a binder retroactive to July 20, 1988 because she was required by her employer to show that she had coverage in effect since that date. Molovinsky specifically asked the Defendant if she had been involved in an automobile accident. The Defendant denied any accidents and again insisted that she only needed a retroactive binder for job purposes. Accordingly, Molovinsky prepared a third binder on either July 25 or 26, 1988, which he signed and mailed to the Defendant. This binder bore identification number DC0720B88 and had an effective date of July 20, 1988, at 12:00 p.m.

The July 23, 1988 application and $413 premium check which Molovinsky had mailed to the Plan were received in the office of the Plan Manager who assigned the Defendant's application to Plaintiff.[3] On or about August 3, 1988, Plaintiff received from the Plan Manager the July 23, 1988 application that Defendant had completed, her premium check, and an Assignment Notice which informed Plaintiff that the effective date of coverage for the policy that Plaintiff was to issue to Defendant

Distribution of applications for assigned risk coverage are made by a Plan Manager whose job it is to receive applications for involuntary assigned risk coverage on an application form approved by the Plan for this purpose. The Manager then distributes a particular application to one of several designated insurers according to the formula set forth in the Plan which is based upon the volume of voluntary coverage written by each carrier during earlier calendar years. The Manager carries out this assignment by mailing to the insurer the application form prepared by the applicant, the premium paid by the applicant, and an "Assignment Notice" on which the Manager indicates the effective date and time that the coverage shall be effective. 26 D.C.M.R., chapter 6, §§ 105.1, 116.1–116.12.

was that on the application, July 23, 1988, at 2:45 p.m.

Plaintiff then issued policy No. 51935642 to Defendant on August 11, 1988. Plaintiff sent a copy of the policy to Defendant with a declaration sheet which stated that the policy period would run from July 23, 1988, through July 23, 1989, effective at 12:01 a.m.

After Defendant received the policy she informed Plaintiff that she had been involved in a fatal accident with Ward in the early morning hours of July 23, 1988. Plaintiff's agents inquired of Defendant why she did not disclose the accident in the application form which she signed on July 23, 1988, at 2:45 p.m. The Defendant replied that she possessed a binder providing her with coverage effective July 20, 1988, and mailed a copy of the retroactively-dated binder to Plaintiff, along with a copy of Sovran Bank Check No. 475 which Defendant had used to pay her installment premium on the July 23, 1988 insurance application. The Defendant altered the date on check No. 475 from July 23, 1988, to July 20, 1988. The Defendant subsequently produced yet another check dated July 20, 1988, in the amount of $413.00, which Defendant claimed she had given to Molovinsky at the time she filled out her original application. This check, which was purportedly written three days prior to check No. 475, was check No. 500.

Molovinsky acknowledges that he received a check from the Defendant on July 20, 1988, but denies that it was check No. 500. Molovinsky states that the check that he received from the Defendant on July 20, 1988 was in the amount of approximately $365.00 which reflects the premium that was assessed pursuant to her original application which contained a $500 collision deductible. The figure of $413 reflects the higher premium assessed in the July 23, 1988 application where the Defendant applied for a $250 collision deductible.

## II. LEGAL DISCUSSION

This Court separately discusses the legal issues raised by each of the applications and binders and rules that regardless of which one Defendant relies upon, the Plaintiff is entitled to summary judgment that it has no duty to defend nor provide insurance coverage for any claims asserted against Defendant arising out of the July 23, 1988 automobile accident which occurred in the Third Street Tunnel at 5:30 in the morning.

### A. *July 23, 1988 Application*

The insurance policy which the Defendant received from Plaintiff was pursuant to the July 23, 1988 application in which Defendant made no mention of the accident. The Plaintiff has no duty to defend or cover the Defendant under this policy for two reasons.

1. Date and Time of Effective Coverage

■ The declaration sheet which Plaintiff issued to Defendant with Policy No. 51935642 states that the policy period runs "from July 23, 1988, to July 23, 1989 A.M. standard time at the address of the named insured as stated herein," effective at 12:01 a.m. However, the application form which the Defendant had signed stated in bold faced print, on page 2, that the effective date and time of coverage was July 23, 1988, at 2:45 p.m., and further stated in bold-faced print that **"IN NO EVENT SHALL COVERAGE BE EFFECTIVE PRIOR TO THE DATE AND HOUR OF COMPLETION OF THIS APPLICATION."** Section 116.6 of the District of Columbia Automobile Insurance Plan, contained at Title 26 of the District of Columbia Municipal Regulations, provides:

If the applicant requires that the coverage applied for become effective at the time of application, the producer of record shall indicate the time and date when coverage is required. The coverages and limits for which the applicant is applying shall become effective as of the time the application is completed. The producer of record and the applicant shall certify in the application the date (day, month, and year) and time (hour, a.m. or p.m.) that the application was written.

Section 116.9 provides "[i]n no event shall coverage be effective prior to the time shown on the application." [4]

In light of Sections 116.6 and 116.9, and the fact that Defendant chose an effective coverage period to begin on July 23, 1988 at 2:45 p.m. when she signed the application, the Plan Manager was required to officially designate the effective date and time of coverage in the Assignment Notice accordingly. Therefore, the fact that the Plaintiff issued a declaration with an inconsistent effective time of coverage is of no significance.[5] The regulatorily required date and time controls the effective period of coverage and obviously prevails over inconsistent terms in the policy as written by the company. *See Manufacturers Life Ins. Co. v. Capitol Datsun, Inc.*, 566 F.2d 354, 357 (D.C.Cir.1977); *Stevens v. American Serv. Mut. Ins. Co.*, 234 A.2d 305 (D.C.1967).

### 2. Fraudulent Concealment

A second reason why the Plaintiff is not required to defend or provide coverage to Defendant, even assuming that the policy was in effect at 12:01 a.m. on the morning of July 23, 1988, is because the Defendant deliberately and fraudulently concealed her involvement in the accident at the time that she filled out the application for coverage.

It is well-established that deliberate misrepresentation or concealment of a material fact in an application for insurance renders that policy void *ab initio*. *See Skinner v. Aetna Life & Cas.*, 804 F.2d 148 (D.C.Cir. 1986); *Johnson v. Prudential Ins. Co.*, 589 F.Supp. 30 (D.D.C.1983), *aff'd*, 744 F.2d 878 (D.C.Cir.1984); *Blair v. Inter-Ocean Ins. Co.*, 589 F.2d 730 (D.C.Cir.1978); *cf.* D.C. Code § 35-414 (governing false statements in applications for life insurance policies).

Moreover, this Court may determine as a matter of law that Defendant's concealment of the accident was deliberate and fraudulent. *See Skinner*, 804 F.2d 148; *Johnson*, 589 F.Supp. 30; *Hill v. Prudential Ins. Co.*, 315 A.2d 146 (D.C.1974); *Metropolitan Life Ins. Co. v. Johnson*, 363 A.2d 984 (D.C.1976).

The District of Columbia Automobile Insurance Plan defines the eligibility of applicants for assigned risk coverage under the Plan. Section 109 of the Plan provides in pertinent part:

*Section 109—Eligibility of Applicants*
109.1

As a prerequisite to consideration for assignment under The Plan, an applicant shall certify, in the application form, that he or she has attempted within sixty (60) days prior to the date of application, to obtain automobile insurance in the District from a company, authorized to do business in the District, and that he or she has been unable to obtain insurance at rates not exceeding those applicable under The Plan.
109.2

An applicant so certifying shall be considered for assignment *upon making application in good faith* to The Plan.
109.3

*An applicant shall be considered by The Plan to be tendered in good faith if the applicant reports all information of a material nature, and does not willfully make incorrect or misleading statements, in the prescribed application form,* or does not come within any of the prohibitions or exclusions listed in subsection 109.4 [emphasis added].

This prohibition on fraudulent misrepresentation in the application is also reflected in the approved application form issued by

---

**4.** If the applicant does not request coverage as of the time and date of the application then a policy issued through the D.C. Assigned Risk Plan does not become effective until "12:01 A.M. on the day following the date of mailing of the properly completed application form to the Plan Office, as shown by the postmark on the transmittal envelope," Section 116.1, or, "[i]f an application is delivered to the Plan Office by means other than the United States Postal Ser-

vice, coverage shall be made effective 12:01 A.M. on the day following receipt of the application in the Plan Office." Section 116.3.

**5.** Joe Griffith, an employee with the underwriting department of Plaintiff, stated in his affidavit that it is customary practice in the insurance industry for all declaration pages, for both voluntary and nonvoluntary coverage, to bear an effective coverage time of 12:01 a.m.

The Plan which the Defendant signed and provides, directly above the Defendant's signature on page 2:

#### Applicant's Statement

I declare and certify that (1) I have tried and failed to obtain automobile insurance in the District of Columbia within the preceding sixty (60) days and have been unable to obtain such insurance at rates not exceeding those applicable under The Plan (2) *to the best of my knowledge and belief that all statements contained in this application are true and that these statements are offered as an inducement to the company to issue the policy for which I am applying* (3) *I realize that any misleading information or failure to disclose required information will not be considered good faith on my part and will prejudice my application for insurance* ... [emphasis added].

There is no dispute that the policy which the Plaintiff issued to Defendant was pursuant to the assigned risk application which Defendant filled out by Defendant on the afternoon of July 23, 1988. Nor is there any dispute that the Defendant knew that she had been involved in an automobile accident at 5:30 a.m. that same date but nonetheless falsely told Dao that she had not been in an accident in the past 36 months. Accordingly, based upon these undisputed facts, this Court rules as a matter of law that the contract of insurance provided by Plaintiff to Defendant was void from its inception.

The Defendant provides no argument that it is entitled to coverage pursuant to her July 23, 1988 application and states that "[i]f this were the only application for insurance filled out and tendered by this Defendant then Colonial Penn may well be entitled to the relief it seeks." *Defendant's Memorandum of Law in Opposi-*

tion to *Plaintiff's Motion for Summary Judgment* at 2. Indeed, at oral argument the Defendant represented that her false statements in the July 23, 1988 application preclude her from relying upon it for coverage of the accident in which she was involved earlier that day.[6]

### B. *July 20, 1988 Application*

■ The Defendant argues that she is entitled to defense and coverage from the Plaintiff by virtue of the insurance binder issued by Molovinsky to the Defendant on July 20, 1988, bearing binder No. DC0720B88. The Defendant's argument is two-part.

First, the Defendant contends that Molovinsky improperly failed to forward the July 20, 1988 application to the Plan for distribution pursuant to section 116.7 which provides:

> The producer of record shall forward to the Plan Office, no later than the first working day after the application is written, two (2) copies of the application, and shall supply the applicant with a copy of the application duly executed by the producer.

Second, the Defendant contends that the producer of record is an agent of the assigned insurer and that accordingly the Plaintiff is liable for Keystone's error. Although Defendant provides no caselaw authority for her agency argument she contends that this result is necessitated because of the "involuntary nature of insurance coverage by participating insurers of The Plan" and a contrary result "would prejudice the rights of an insured which is precluded by section 116.9 of The Plan." Section 116.9 provides that

> In no event shall coverage be effective prior to the time shown on the application, *nor shall any failure on the part of the producer of record to properly*

---

**6.** The Defendant similarly conceded in oral argument that she is not entitled to coverage based on the retroactive binder issued to her on July 25, 1988 because of her false statements in obtaining that binder. There is no dispute that the Defendant told Molovinsky that she needed the retroactive binder "for job purposes only" and that she expressly denied to Molovinsky

upon his inquiries that she had been involved in any accidents. Molovinsky's subsequent issuance of the third binder was based solely upon the Defendant's fraudulent representations. Accordingly, the Defendant is barred by the doctrine of laches from relying upon this document which she obtained through fraudulent means and for fraudulent purposes.

*perform under the provisions of this section prejudice the rights of any applicant with respect to the 30 day period of coverage provided in the "Evidence of Insurance" section of the application.* [emphasis added]

This Court finds that based on the undisputed facts of this case Molovinsky was not remiss in his duties by failing to forward the Defendant's July 20, 1988 application to the Plan. Although section 116.7 provides that the producer of record shall forward an application "no later than the first working day after the application is written," the Defendant in this case impliedly cancelled that application by specifically telling Molovinsky not to deposit or cash the check which she provided as an installment premium on the application. Under the Plan an application cannot be processed by the Plan Manager and assigned to a member insurer without an accompanying premium payment. Accordingly, it is patently absurd for the Defendant to argue that she did not impliedly cancel her application at the same time that she does not dispute the fact that she had instructed Molovinsky not to deposit or cash her premium check.

In light of this finding this Court does not reach the legal issue of whether Plaintiff would be required to provide coverage to the Defendant if Keystone Insurance as the producer of record did fail in its duty to timely forward the July 20, 1988 application to the Plan. However, this Court notes that a broker is generally the agent of the insured, for most purposes, including initial placement of a risk. *See Travelers Indemnity Co. v. Booker*, 657 F.Supp. 280 (D.D.C.1987). Moreover, the Plan provisions do not address this issue.

This Court further notes that the Plaintiff is only one of several insurers required to participate in the Plan. If the July 20, 1988 application was not cancelled by the Defendant then one of any number of member insurers other than the Plaintiff could have been assigned the application. To rule that the Plaintiff would be liable to cover the Defendant on the date that the first application was completed on the basis of a subsequently completed and mailed application which was ultimately assigned to the Plaintiff would impose a fortuitous hardship on the Plaintiff. One of the obvious problems with the Defendant's analysis is how does her agency theory apply in a case where an applicant completes an application which is never mailed by the producer of record and yet there is never a subsequent application completed because the applicant is unaware of the producer's error? There certainly would be no assigned insurer upon which to impose agency liability because the application was never received by the Plan Manager and hence never assigned. It seems to the Court that this scenario is much more likely to occur and the facts of the instant case, in which Defendant completed a subsequent application, are unusual.

Accordingly, it hereby is

ORDERED that Plaintiff's Motion for Summary Judgment be, and the same hereby is, GRANTED.

