Dick S. WESTHOVEN, a/k/a Richard S. Westhoven, Appellant,

v.

NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, Appellee.

No. 10453.

District of Columbia Court of Appeals.

Argued March 15, 1977.

Decided March 15, 1978.

William Taft Lesh, Bethesda, Md., for appellant, William A. Mann, Washington, D. C., was on the brief for appellant.

John Eris Powell, Washington, D. C., for appellee.

Before KELLY, GALLAGHER and MACK, Associate Judges.

GALLAGHER, Associate Judge:

Appellant Westhoven began work with a new employer just prior to the issuance to it of a group policy of health and accident disability insurance by New England Mutual Life Insurance Company (appellee). Shortly thereafter Mr. Westhoven suffered heart attacks and claimed entitlement to

the policy benefits. The Insurance Company paid disability benefits for one month and then, after investigation, terminated the benefits and filed suit for cancellation of Westhoven's coverage under the group policy. Mr. Westhoven counterclaimed for benefits under the policy. After all the evidence was in, the trial court granted a directed verdict for the Insurance Company [1] on its suit for rescission of Westhoven's coverage and, also, it denied a directed verdict on the counterclaim.

In appellant's application for the insurance there were these questions to which he made these answers:

1. Have you consulted or been examined by a physician or other practitioner within five years?

Answer given: Yes.

a. Give date and name of doctor for each consultation.

Answer given: Geo. L. Eckert—May, 1973.

b. What symptoms prompted the consultation?

Answer given: Check up.

c. What did the doctor prescribe or recommend?

Answer given: A blank was left.

5. Have you ever had or been told by a physician or other practitioner that you had or have . . . high blood pressure . . .?

Answer given: No.

It was undisputed that appellant had been treated by Dr. Eckert not once as asserted, but seven or eight times in the year preceding his application; that he had gone to the practitioner because of stress, strain and tension; that his blood pressure was high and he was told it was "elevated"; and that drugs were prescribed to treat his blood pressure problem and it was recommended that he lose weight. A representative of the Insurance Company testified that had appellant answered the questions accurately the company would have sought

1. The employer, American Advertising Federation, Inc., was joined in the trial court as a codefendant and the directed verdict was also entered against it. It is not a party to this appeal.

a statement from Dr. Eckert and, on receipt of the information he supplied in his deposition, particularly in relation to blood pressure, it would have declined to issue appellant the insurance.

Appellant contends essentially that (a) the trial court erred in not permitting the case to go to the jury, (b) the answers on the application were neither inadequate nor inaccurate so as to constitute misrepresentations, (c) there was no deliberate misrepresentation, and (d) the incontestability clause in the policy barred the company from asserting their grounds for nonpayment of benefits.[2]

We stated in *Metropolitan Life Insurance Co. v. Johnson*, D.C.App., 363 A.2d 984, 987 (1976) that:

> The courts of this jurisdiction have consistently construed [§ 35–414] as meaning that "proof that an application for insurance contains a false statement which materially affects the acceptance of the risk or hazard assumed by the insurer is sufficient to defeat a claim under the policy." *Hill v. Prudential Ins. Co.*, D.C. App., 315 A.2d 146, 148 (1974). As the circuit court explained in *Jannenga v. Nationwide Life Ins. Co.*, 109 U.S.App. D.C. 385, 388, 288 F.2d 169, 172 (1961): "The test of materiality is whether the representation would reasonably influence the insurer's decision as to whether it should insure the applicant."

There was here undisputed evidence that had the Insurance Company known the medical facts as they were later developed it would not have issued appellant the policy.[3] If appellant had responded to the question in the application in relation to the doctor's prescription it would have been evident that he was being treated for high blood pressure. It is common knowledge that this is one of the principal causes of heart attacks. The material variance from fact in appellant's answers to the questions is evident. These were circumstances which "would reasonably influence the insurer's decision as to whether it should insure the applicant"; and there was present "a false statement which materially affect[ed] the acceptance of the risk or hazard assumed by the insurer" and it was "sufficient to defeat a claim under the policy." *Metropolitan Life Insurance Co. v. Johnson, supra.*[4] Furthermore, as the evidence established without contradiction, the company would not have issued the policy had it been apprised of appellant's medical condition.

We conclude misrepresentation under the statute (§ 35–414) was established as a matter of law and consequently, there being no jury question, the trial court correctly directed a verdict for the Insurance Company.

We turn now to the waiver contention. Appellant argues that the incontestability clause of the policy applies and this bars the company's action for rescission of the policy grounded upon allegations of misrepresentation as the suit was filed too late; and that, in any event, the company waived any clause in the policy itself which, if applied, would make timely the suit by the company because the Certificate of Coverage issued to appellant contained a contrary provision which barred the action. We disagree.

The incontestability clause of the policy provides:

> Except for non-payment of premiums, this Policy shall be incontestable after one year after its date of issue. No statement made by any individual insured hereunder relating to his insurability shall be used in contesting the validity of

---

2. Appellant also makes an evidentiary argument which we conclude is without merit.

3. It was established, collaterally, during the proceeding that appellant was born on March 20, 1920 and not on March 20, 1926, as appeared in his application.

4. While an omission to answer may, under some circumstances, be considered waived if a policy is later issued, here the omission to answer was but a portion of the misrepresentations and must be viewed in context with the misleading disclosures. So viewed, the waiver doctrine in *Phoenix Mut. Life Ins. Co. v. Raddin*, 120 U.S. 183, 7 S.Ct. 500, 30 L.Ed.2d 644 (1887) does not apply.

the insurance with respect to which such statement was made if such insurance has been in force for a *period of one year* during such individual's lifetime, nor unless contained in a written instrument signed by him. All statements made by the Policyholder or by any individual, shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall be used in defense of a claim under this policy unless it is contained in a written instrument. [Emphasis added.]

Appellant began his employment on June 18, 1973. Ninety days from then fell on September 15. Ninety days' service was required to acquire eligibility. The suit for cancellation was filed September 12, 1974, a few days short of the one-year provision. There would be no dispute on the proposition that the incontestability clause did not apply were it not for a provision in the Certificate of Coverage which, according to appellant, requires application against the company of the incontestability provision of the policy. While the company generated a certain amount of confusion on this question with its Certificate of Coverage, we conclude the policy provision on incontestability remained unaffected.

The cover page of the Certificate carries the effective date as being July 1, 1973—which, it so happens, is when the group policy became effective. Further on in the Certificate there appears this provision:

The insurance of any employee electing such insurance before becoming eligible shall become effective automatically on the date of his eligibility, provided he is actively at work on a full-time basis on that date, and *has completed four weeks of continuous active full-time employment* immediately preceding such date. [Emphasis added.]

Appellant argues that no matter which relevant date is accepted as the starting point, *i. e.*, either his starting date of employment (June 18, 1973) or four weeks from the date of employment, or the effective date on the face of the Certificate (July 1, 1973), the suit was not filed until after one year from either date.

The actuality is, however, that the policy provides an employee is *eligible* for insurance "on the date of issue of this Policy, or upon completion of ninety days of continuous active employment, *whichever is later.*" (Emphasis added.) Manifestly, the ninety days began to run on his employment date, *viz.*, June 18, 1973.

In the policy there is contained the provision:

INDIVIDUAL CERTIFICATE

The Insurance Company will issue to the Policyholder for delivery to each insured employee an individual certificate setting forth the benefits to which such employee is entitled under this Policy, to whom payable, and the rights of the employee, if any, upon termination of his employment, termination of this Policy or any part hereof. Any *such certificate shall not constitute a part of this Policy and shall in no way modify any of the terms and conditions set forth in this Policy.* [Emphasis added.]

Additionally, the policy provides that it and the application of the policyholder (the employer) constitute the entire contract between the parties. The Certificate relates essentially to benefit entitlement and has no relation to incontestability of the policy. It has been held that the certificate issued to an employee is not part of the contract, *Boseman v. Connecticut General Life Insurance Co.*, 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937).

Applying the ninety-day provision, as we must, the suit was timely so as to preclude application of the one-year incontestability provision. This is because appellant's eligibility did not commence until September 15, ninety days from the commencement of the employment date of June 18. Suit having been filed the following September 12, it was inside the governing one-year provision. Moreover, there was not demonstrated a reliance to appellant's detriment on any representation by the Insurance Company in the certificate. We conclude the Insurance Company was not barred from cancellation of his policy.

*Affirmed.*