OPINION OF THE COURT
David O. Boehm, J.
This case was tried before the court without a jury on stipulated facts. The plaintiff, Home Mutual Insurance Company ("Home Mutual”) seeks indemnification, costs and expenses from the defendant, Broadway Bank and Trust Company ("Broadway Bank”), for being compelled to defend and settle a lawsuit which had been brought against Shelva Ludwig ("Ludwig”), an insured, as the result of an automobile accident occurring after Broadway Bank, which financed the insurance policy issued to Ludwig by Home Mutual, ineffectively canceled Ludwig’s policy.
Broadway Bank is a premium finance agency empowered by article 12-B of the Banking Law to advance insurance premiums to insureds. Upon default by an insured in making required periodic repayments, Broadway Bank had the authority to cancel insurance policies pursuant to a power of attorney given it by the insured in conformance with subdivision 1 of section 576 of the Banking Law.
On June 19, 1972, Ludwig, through her insurance agent, entered into an agreement with Broadway Bank to finance an automobile liability policy issued by Home Mutual through the assigned risk pool. Broadway Bank paid the full premium to Home Mutual under an arrangement whereby Ludwig was to pay periodic installments to Broadway Bank in repayment at an annual interest rate of 17.5%.
Because Ludwig apparently defaulted on the next monthly payment, Broadway Bank, in conformance with the terms of the premium finance agreement, mailed a notice on July 19, 1972 to Ludwig and Ludwig’s agent advising that the policy would be canceled at 12:01 a.m. on August 24, 1972 unless payment was received prior to that date.
On August 21, 1972, still not having received payment, Broadway Bank mailed another notice, dated July 21, 1972, to Ludwig, Ludwig’s agent and Home Mutual. This notice was identical in form and substance to the July 19 notice, with the addition of a check mark in a box designated "Cancellation”. *230 Broadway Bank further requested that Home Mutual return the unused premium prorated as of August 24, 1972, the date of cancellation. Home Mutual, in response, mailed its check for $243, the amount of the premium, made payable to Broadway and Ludwig’s agent.
On September 21, 1972, Ludwig’s husband was involved in an accident while driving the automobile which had been covered by the Home Mutual policy. When contacted by the injured party’s attorney, Home Mutual responded that the policy had been canceled prior to the date of the accident and disclaimed liability.
Following extensive legal proceedings, Special Term (Honorable Edward O. Provenzano) held that the Home Mutual policy had not been effectively canceled because the notice of cancellation was mailed less than 10 days prior to the effective date, as required by section 576 (subd 1, par [a]) of the Banking Law. This finding was affirmed by the Fourth Department in Balboa Ins. Co. v Widener (47 AD2d 815). Home Mutual was therefore obliged to defend the claim against Ludwig and, after one day of trial, settled for $25,000.
Home Mutual now sues to recover the $25,000 paid in settlement, the attorney’s fees and expenses incurred in defending Ludwig and the costs of this action. Its action is based upon the claimed negligence of Broadway Bank in ineffectively canceling Ludwig’s policy and thereafter incorrectly notifying Home Mutual that the policy had been canceled, all of which caused it to be responsible to pay moneys it would otherwise not have been liable for.
In response, Broadway Bank argues that it had no responsibility as an agent to Home Mutual nor was there any other relationship between it and Home Mutual sufficient to warrant imposition of liability. Furthermore, even should it be found liable, Broadway Bank’s position is that its liability is limited to the amount of the premium refunded to it by Home Mutual.
Premium finance agencies are defined as persons or banks engaged, in whole or in part, in the business of entering into premium finance agreements with insureds, or in acquiring premium finance agreements from others (Banking Law, § 554, subd 7, pars [a], [b]). Section 567 (subd 3, par [a]) of the Banking Law requires that the premium finance agreement contain the name and place of business of the agent or broker negotiating the contract and section 576 (subd 1, par [a]) *231 provides that copies of the notice of intent to cancel for default be sent to the insured and the insurance agent or broker prior to cancellation.
Ordinarily, an agent or broker employed to procure insurance has no authority thereafter to cancel the policy (6A Appleman, Insurance Law and Practice, § 4224, pp 644-645; see, also, 3 Couch, Insurance 2d, § 25:16). However, an insured may authorize the finance company which procured a compulsory automobile liability policy for him to cancel the policy in his behalf, which was done in this case (8 Appleman, Insurance Law and Practice, § 5017, p 631; see, also, 3 Couch, Insurance 2d, § 25:17).
In addition, section 576 (subd 1, par [d]) of the Banking Law provides that the premium finance agency’s cancellation of the policy is to be treated by the insurance company as if it had been submitted by the insured himself. By these terms, the Banking Law creates a primary relationship between the insured and the finance agency, with the finance agency having the power to act on behalf of the insured with the insurer.
Thus, it would appear that any agency would run solely between the premium finance company and the insured through the insurance agent. There would be none, either in fact or by operation of law, between Broadway Bank and Home Mutual.
Although agencies have been implied by law for the benefit of third parties in situations involving insurance agencies and insurers (see, e. g., Krstovic v Van Buren, 200 App Div 278, revd on other grounds 235 NY 96; Ring v Long Is. Real Estate Exch., 93 App Div 442, affd 184 NY 553; Price v lawrence-Van Voast, Inc., 58 AD2d 727), the law would not imply an agency in this case. For example, in Condon v Exton-Hall Brokerage & Vessel Agency (83 Misc 130), an insurance company’s assignee sought to hold a procuring agent liable for failure to cancel an insurance policy upon direction to do so by the insurance company’s general agent. The court, in finding that the procuring agent was not liable, held that liability had to be predicated upon the existence of an actual agency relationship between the insurance company and the procuring agent and that none existed.
Further, in Gabriel v Attigliato (60 Misc 2d 536), where an insurance broker obtained an automobile liability policy by placing an application with the assigned risk pool rather than *232 directly with the insurance company with which the policy was placed, it was held that the broker was the agent of the insured, not the insurer. "The policy was obtained through the assigned risk which makes acceptance of the risk a matter of duty enforced by law rather than of voluntary relationship with the broker”. (Gabriel v Attigliato, supra, p 538.)
Citing this case (sub nom. Luther v Lumbermens Mut. Cas. Co.) along with many other State and Federal cases in accord, the Court of Civil Appeals of Texas in Employers Cas. Co. v Mireles (520 SW2d 516, 520) observed: "a majority of the authorities and texts which have considered the question hold that in the absence of statutory authority or some special indicia of authority the assigned risk broker is the agent of the insured and not of the insurer.”
It is clear, therefore, that both Broadway Bank and the procuring broker are agents of the insured. Indeed, Home Mutual admits as much in its complaint by alleging that Broadway Bank acted as Ludwig’s agent. Consequently, no liability may be thrust upon Broadway Bank by virtue of any agency obligation. Nor will an agency be implied, particularly in the absence of a noncontracting, innocent third party whose rights would otherwise be affected.
Even in the absence of an agency, the plaintiff argues, defendant is nevertheless responsible to it because of its negligent misrepresentation that the policy had been canceled. Although a cause of action for negligent misrepresentation is recognized in New York, its application has been limited to those cases where an obligation would not have existed but for such misrepresentation.
In one of the earliest cases in New York, Glanzer v Shepard (233 NY 236), the defendant was requested by a third party to certify the weight of beans being stored by that party. The defendant was advised that the certification was required in connection with the sale of the beans to the plaintiff. The defendant complied with the request, but incorrectly certified the weight. In purchasing the beans, the plaintiff relied on the certification only to discover that the beans weighed less than the certificate had represented. The Court of Appeals allowed the plaintiff to recover the amount overpaid, stating (p 239): "The defendants held themselves out to the public as skilled and careful in their calling. They- knew that the beans had been sold, and that on the faith of their certificate payment would be made. They sent a copy to the plaintiffs for the very *233 purpose of inducing action. All this they admit. In such circumstances, assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed.”
The creation of a duty arising out of its voluntary assumption depends, however, upon the party to be benefited. In Ultramares Corp. v Touche (255 NY 170), an accounting firm was employed by a third party to prepare and certify a balance sheet as to the condition of the third party’s business for the year 1923. The accounting firm did so, but failed to ascertain that the books of the third party had been falsified to set forth assets which did not exist. Accordingly, the balance sheet showed a fictitious net worth. Plaintiff, in reliance upon the balance sheet prepared by the accounting firm, loaned the third party money. Shortly thereafter, the third party went into bankruptcy. Judge Cardozo, writing for the majority, refused to find the accounting firm liable for negligent misrepresentation. In so doing, he distinguished the holding in Glanzer, stating (p 183): "No one would be likely to urge that there was a contractual relation, or even one approaching it, at the root of any duty that was owing from the defendants now before us to the indeterminate class of persons who, presently or in the future, might deal with the Stern company in reliance on the audit. In a word, the service rendered by the defendant in Glanzer v. Shepard was primarily for the information of a third person, in effect, if not in name, a party to the contract, and only incidentally for that of the formal promisee.”
The Court of Appeals in Ultramares Corp. v Touche (supra) reviewed three earlier Court of Appeals cases, including International Prods. Co. v Erie R. R. Co. (244 NY 331) which set forth the four elements required in an action for negligent misrepresentation: (1) knowledge or its equivalent that the information is desired for a serious purpose; (2) that he to whom it is given intends to rely and act upon it; (3) injury in person or property because of such reliance; and (4) "the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.” (International Prods. Co. v Erie R. R. Co., 244 NY 331, 338, supra.) This four-pronged test was reaffirmed in White v Guarente (43 NY2d 356) and the Fourth Department recently *234 held that the failure to show a special relationship of trust is fatal to an action for negligent misrepresentation (Everson v First Trust & Deposit Co., 46 AD2d 722).
Applying these requirements to this case it is apparent that all four are met. Broadway Bank knew that the statement of cancellation was required by Home Mutual for a serious purpose, that Home Mutual would rely on the notice of cancellation and that Home Mutual would be damaged by its reliance if the notice were either inaccurate or ineffective. Lastly, Broadway Bank, in assuming the burden of administering the policy, also assumed the correlative duty of accurately informing Home Mutual of its status. Unlike the plaintiff in Ultramares, Home Mutual was not a member of an indeterminate class of parties which might be affected by Broadway Bank’s representations. To the contrary, as in Glanzer, Broadway Bank knew that Home Mutual’s subsequent conduct would be governed by Broadway Bank’s actions in canceling the policy and by its representations to that effect. Although no special relationship of trust has been alleged in plaintiff’s complaint, such relationship may be reasonably inferred from all of the other allegations in the complaint.
Accordingly, all of the elements necessary to prove a cause of action for negligent misrepresentation having been satisfactorily met, Home Mutual is entitled to a verdict against Broadway Bank. We come now, therefore, to the damages which Home Mutual is entitled to recover. While there are no New York cases directly on point, four cases from other jurisdictions would appear to govern the result.
In Max Holtzman, Inc. v K & T Co. (375 A2d 510 [DC App]), an insured who obtained judicial reformation of an insurance policy improperly written by an insurance agent recovered under the policy for a loss covered by the policy after, but not prior to, reformation. The insurance company’s cross claim against the agent for indemnification from the agent was dismissed. The District of Columbia Court of Appeals, affirming the trial court’s reformation and award of damages, also affirmed the denial of the cross claim for indemnification, stating (pp 514-515): "when an agent had the authority to bind the insurance company, but negligently bound it for a price different than he was required to obtain, the only claim the insurance company has against the agent would be for the difference in the premium paid and that premium which *235 would have been paid had the insured received the coverage agreed upon. [Citations omitted.] We adopt this reasoning and note that this rule is merely an application of the more general rule that a party can recover only for damages proximately caused by a defendant’s negligence.”
In Julien v Spring Lake Park Agency (283 Minn 101), an authorized agent orally bound an insurance company to issue a policy, but did not notify the company. The insured sued the company and the insurance agency for a subsequent loss, and the insurance company cross-claimed against the agency for indemnification. The Minnesota Supreme Court affirmed the trial court’s finding that the plaintiff was entitled to recover on the policy and that the insurance company was not entitled to indemnification by the agency, reasoning that the company would not have refused to issue the policy and that the delay in communicating notice to the company neither increased the risk nor caused the insurance company any damage.
Similar logic was applied in Lumbermens Mut. Ins. Co. v Bowman (313 F2d 381), where an insurance agent renewed a fire insurance policy, originally owned by one person, in the name of that person and another. The agent failed to issue a new insurance contract or notify the company of the change. When the building covered by the policy subsequently burned down, the insurance agent notified the company and issued a backdated contract reflecting the change in insureds. The insureds sued the company on the policy, and the insurance company, claiming negligence, cross-claimed against the agent for indemnity. In affirming the trial court’s finding that the insurance company was liable to the insureds but that it was not entitled to indemnity, the Tenth Circuit Court of Appeals reasoned that the agent’s conduct, although admittedly negligent, neither increased the risk of loss nor bound the company to do anything it would not have been obliged to do in any case.
Finally, in A.I.D. Ins. Servs. v Riley (25 Ariz App 132), an insurance company hired an inspection service to examine and describe property already covered by a policy issued by its agent. The report prepared by the inspection service described the premises as a single-family residence. In spite of this description, the company, in reliance on its agent’s prior representation that the property was a three-family dwelling, continued to insure it as such. In reality, the dwelling was a *236 duplex with a separate rental unit in the rear. When the unit in the rear burned down, the insureds sued the insurance company. The insurance company disclaimed liability and cross-claimed against the inspection bureau, seeking indemnification in the event that it was found liable. The Arizona Court of Appeals denied indemnification, reasoning that the only loss suffered as a result of the inspection bureau’s actions was the extra premium which the insurance company would have charged had its information been accurate.
The reasoning of those cases is applicable to this case. Home Mutual had already issued the insurance policy and had no interest in or connection with the cancellation thereof. Had Broadway Bank not acted, Home Mutual would have continued the policy in force and would have been required to defend and pay the settlement in the prior action. It cannot be said that the settlement of the claim or the other expenses incurred were directly related to Broadway Bank’s representation to Home Mutual that the policy was canceled; rather, the defense of the action and the settlement of the claim were more accurately due to the fact that Home Mutual had issued a policy to the insured prior to the date of the accident which it was perfectly prepared to and would have kept in force but for the cancellation.
Thus, in ascertaining the amount of damages to be awarded, the court should look only to the proximate consequences of the actions of the defendant. Since the only consequence of Broadway Bank’s conduct was the refund of the unused premium by Home Mutual upon receipt of the purported notice of cancellation, that is the amount which the plaintiff may recover in this action.
Broadway Bank’s liability being thus limited, it is unnecessary to consider the question of awarding counsel fees and expenses incurred by Home Mutual in defense of the prior action. The defense thereof was its responsibility from the outset (see Central Trust Co., Rochester v Goldman, 70 AD2d 767).
Judgment is awarded Home Mutual in the amount of $243.