**Michelle R. JOHNSON, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

**No. CA 81–30.**

United States District Court, District of Columbia.

Dec. 30, 1983.

Louis Fireison, Bethesda, Md., for plaintiff.

Randall C. Smith, Charles H. Fleischer, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

The plaintiff brought this action to recover the face value of a life insurance policy, in the amount of $56,000, issued by the defendant insurer on the life of Douglas Johnson (decedent) on September 16, 1977. The case is now before the Court on the defendant's motion for summary judgment. After giving careful consideration to the motion, and the opposition thereto, together with the record and the arguments of counsel, the Court concludes that the motion should be granted.

I

On or about September 16, 1977, the decedent entered into an agreement with the insurer under which the insurer agreed to insure the life of the decedent in the amount of $56,000 in return for the payment of premiums by the decedent. In his application for insurance, the decedent was asked whether he "regularly used, or is ... currently using, barbiturates or amphetamines, *marijuana*, or other hallucinatory drugs, or heroin, opiates or other narcotics except as prescribed by a doctor" (emphasis the Court's). He answered, "No". *See* Application dated September 16, 1977. In signing that application, the decedent agreed to be bound by all "[his] answers and statements ... in any part of [the] application." *Id.* Based upon his responses, a standard policy was issued. The policy thereafter lapsed for nonpayment of premiums in March 1978.

On June 3, 1978, the decedent signed and submitted a reinstatement application. That application asked whether the insured "regularly used, or is currently using, barbiturates or amphetamines, *marijuana* or other hallucinatory drugs, or heroin, opiates or other narcotics except as prescribed by a doctor" (emphasis this Court's). Once again the decedent responded, "No". The decedent declared the above statement to be true to the best of his knowledge and belief.

Three days after signing the reinstatement application, the decedent entered the Greater Southeast Community Hospital where he was diagnosed as suffering from a pulmonary abscess. He remained in the hospital until his death on June 19, 1978.

The reinstatement application had not been approved by the home office of the insurer as of June 6, 1978, or as of the date of decedent's death.

When the decedent was admitted to the hospital on June 6, he was seen by Dr. Robert S. Castrence who examined him and took a history. On that day, the decedent advised Dr. Castrence that "[h]e smokes pot, up to six joints a day—heavy on weekends." See Castrence's Dep. at 10; Defendant's Opposition to Motion to Compel, Exhibit C. Dr. Castrence asked Dr. Louis V. Kaufman to consult with him in the case. Dr. Kaufman examined the decedent on June 10, 1978. He found the decedent to be "awake", "conscious", and "articulate", and he also took a patient history from him. Kaufman Dep. at 8. The decedent advised him that he smoked "approximately three to five joints of marijuana a day for the past two to three years." Kaufman Dep. at 9–10. Defendant's Opposition to Motion to Compel, Exhibit D.

The decedent's widow testified that the decedent smoked marijuana "if we went to a party, or to a social gathering, something of that nature." Johnson Dep. at 17. She noted that they went to parties "maybe once a month", and that there was "generally" marijuana at the parties. Id. The plaintiff also testified that the decedent also went to parties and social gatherings without her, "maybe once or twice, the same month." Id. at 18. The decedent also "went out to play ball after coming home from work, most nights, in the evening". Id. at 21. When he got off at 6:00 o'clock in the evening, he would come home and eat and then go out between 7:00 and 7:30 p.m. and return between 10:00 and 11:00 p.m. Id. at 22. He would say that he was going to play ball "with the boys", but "where they went, what they did" the plaintiff does not know. Id. at 22. In response to defendant's interrogatories, the plaintiff stated that the only time decedent used marijuana "was on occasion when we were socializing." Plaintiff's Answer to Interrogatory No. 33.

The plaintiff filed a related action in the Circuit Court for Montgomery County, Maryland in the summer of 1979. The case was removed to the federal court on August 17, 1979. See Johnson v. Prudential Insurance Company of America, Civil No. 79–1532 (D.Md.). In 1980 plaintiff sought discovery "concerning the processing of life insurance applications in which the applicant either did or did not admit to having a preexisting medical condition or to regular use of drugs." See defendant's objection to Magistrate's Order, Exhibit B (Judge Blair's letter dated March 26, 1980 filed in Civil No. 79–1532 (D.Md.)). Judge Blair denied discovery of the above matters in his letter order filed on March 26, 1980. This Court was later to deny a similar request in this case. See Memorandum Order filed July 29, 1983. The Maryland case was thereafter dismissed by the plaintiff pursuant to Fed.R.Civ.P. 41(a)(2).

II

The first issue raised by the motion is whether, at the time of the decedent's death, the policy had lapsed, or whether it had been reinstated.

The decedent applied for the policy on September 16, 1977. In his application submitted to the insurer, he stated that he had not "regularly used" and was not "currently using" marijuana. In March 1978 the policy lapsed for nonpayment of premiums. On June 3, 1978, the decedent submitted an application to reinstate the policy. In that reinstatement application he again stated that he did not "regularly" use and was not "currently" using marijuana. The application for insurance and the application for reinstatement were accepted by the same insurance agent, Paul L. Washington. The application for insurance signed by the decedent in September 1977 provided that the applicant agreed that "no agent has the authority to make or modify any contract, to pass on insurability or to waive any of Prudential's rights or requirements." The application for reinstatement provided that the applicant agrees that "the policy shall not be reinstated until Prudential has re-

ceived payment of all arrears *and* has approved this application" (emphasis the Court's). At the time he applied for reinstatement, the decedent gave Mr. Washington $62.60 representing premiums for March, April, May and June 1978. Washington Dep. at 15–16.

▪ The plaintiff contends that Mr. Washington represented to the decedent that the policy would be immediately reinstated once the premium payments were made and the application for reinstatement was signed. She presents no evidence to support that contention. Moreover, the form signed by the decedent clearly provides that the policy shall not be reinstated until the insurer has approved the application. Accordingly, the Court concludes that the policy was not reinstated on June 3, 1978. Decedent entered the hospital on June 6, three days later, and since the application was pending and the policy had not been accepted, he had a duty to inform the insurer of his hospitalization since it represented a change which could "materially affect [ ] the risk" undertaken by the insurer. *Kaplan v. Manhattan Life Insurance Company of New York*, 71 App. D.C. 250, 252, 109 F.2d 463, 465 (1939). *See also Stipcich v. Metropolitan Life Insurance Company*, 277 U.S. 311, 316–317, 48 S.Ct. 512, 513–514, 72 L.Ed. 895 (1928). The policy was never effectively reinstated and was in a lapsed status when the decedent died.

Based upon the undisputed facts in this case, and for the reasons set forth above, the defendant is entitled to judgment as a matter of law.

### III

Assuming, arguendo, that the policy was not in a lapsed status, the next issue is whether the decedent made a false statement which would bar recovery.

DC.Code § 35–414 (1973) provided: *

The falsity of a statement in the application of any policy of insurance shall not bar the right to recovery thereunder un-

less such false statement was made with intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the company.

▪ Under the statute, a false statement in the application bars recovery if the statement either was made to deceive *or* if it materially affected acceptance of the risk or the hazard assumed by the insurer. *Hill v. Prudential Insurance Company of America*, 315 A.2d 146 (D.C.App.1977).

▪ Notwithstanding the plaintiff's protestations to the contrary, there can be no dispute that the representations made by the decedent in both his application for insurance and his application for reinstatement were false. Plaintiff contends that there is a genuine issue of fact as to whether decedent was a "regular" user of marijuana. But that was not the question posed in either application. The decedent was asked instead whether he "regularly used" or *"is currently using"* marijuana. He replied in the negative in both applications. Moreover, in responding to the question, he did not merely rely on the printed question, but rather asked the agent to explain what was meant by "regular" and "current". Washington Dep. at 9. The agent advised him that the words meant "any use within the prior five years." *Id.* at 10.

The questions asked by the insurer were not ambiguous and there is no reason to believe that they were not understood by the decedent. The plaintiff concedes that the decedent used marijuana in her presence approximately once a month, therefore it is obvious that the decedent's answers were false. Indeed, it is significant that on September 16, 1977 and June 3, 1978, the defendant said that he did not use marijuana, while on June 6, 1978, he advised Dr. Castrence that he smoked "up to six joints a day—heavy on weekends." On June 10, 1978, he advised Dr. Kaufman that he smoked "approximately three to five joints of marijuana a day for the last two to three years."

* The statute has not been changed. *See* D.C.Code § 35–414 (1981).

34

There is no evidence that the decedent did not smoke marijuana and was not currently using it at the time he completed the applications. By his own statements made at the time when his health was endangered, he stated that he was a regular and current user of marijuana. Moreover, at the time he gave that history to the doctor, he had every reason to be truthful since his life was at stake. The doctor had noted that, at that time, the decedent was "a very critically ill individual." Kaufman Dep. at 18. In addition, it is significant that at the time he entered the hospital, his medical complaint was a pulmonary abscess. Obviously, smoking might relate to a lung problem and the decedent had never smoked cigarettes on a regular basis. Under these circumstances, it seems most reasonable that the decedent would have advised his treating physician of anything which might have caused the lung abscess. Finally, in this regard, it is noted that Dr. Kaufman was concerned that the lung damage might have been caused by marijuana which had been sprayed with paraquat. *Id.* at 20.

It is therefore clear that the decedent had used and was using marijuana on September 16, 1977 and on June 3, 1978. His answers in the applications denying such use were false.

## IV

The determination that the statements made by decedent in applying for insurance and later for reinstatement were false is not dispositive of the issue before the Court. As the statute provides, a false statement must be made to deceive, or must relate to a material matter.

■ Here, the only conclusion which can be drawn from the undisputed facts is that the decedent made the false statements with intent to deceive the insurer. Certainly, he did not forget that he smoked marijuana. This is established by the fact that he questioned the agent about what was meant by "regular" use and "current" use. *See* Washington Dep. at 9–10. He later advised his treating physicians that he had smoked up to "six joints a day" and heavier

on the weekends. He told his doctors three days after he signed the application for reinstatement that he was smoking marijuana, currently and regularly. Finally he told Dr. Kaufman that he had been smoking for two to three years. Those statements made to his treating physicians are admissible in evidence. *See* Fed.R.Evid. 803(3), (4), and (6); 804(b)(3). His answers in the applications were "false and misleading and related to a matter about which the insured could not reasonably have been mistaken." *Kavakos v. Equitable Life Assurance Society,* 66 App.D.C. 380, 88 F.2d 762 (1936). *See also Metropolitan Life Insurance Company v. Adams,* 37 A.2d 345, 350 (D.C.Mun.App.1944) (insured's answer so inherently improbable and contrary to human experience as to make it false in fact and as a matter of law and was made with intent to deceive).

The Court concludes that the false statements were made with the intent to deceive the insurer into issuing a policy of insurance on the decedent's life. For this reason the insurer is entitled to judgment as a matter of law.

## V

■ The false statement related to a material matter. The test of materiality, as that term is used in the statute is "whether the representation would reasonably influence the insurer's decision as to whether it should insure the applicant." *Jannenga v. Nationwide Life Insurance Company,* 109 U.S.App.D.C. 385, 388, 288 F.2d 169, 172 (1961). *See also Prudential Insurance Company of America v. Saxe,* 77 U.S.App. D.C. 144, 153, 134 F.2d 16, 25, *cert. denied* 319 U.S. 745, 63 S.Ct. 1033, 87 L.Ed. 1701 (1943); *Jones · v. Prudential Insurance Company of America,* 388 A.2d 476 (D.C. App.1978); *Westhoven v. New England Life Insurance Co.,* 384 A.2d 36 (D.C.App. 1978); *Hill v. Prudential Insurance Company, supra.*

The law prior to the enactment of Section 35–414, focused, not upon whether the applicant was attempting to mislead the insurer or whether the statement might have

led the insurer to accept a risk it might not have taken had it known the truth, but rather upon the misrepresentation itself. Any misrepresentation in the application, no matter how innocent or immaterial, was sufficient to allow the insurer to avoid the contract. The statute is designed to avoid such a harsh result. Thus it requires an intent to deceive or a material misrepresentation. But it seems clear that the statute, like the prior law, focuses on the misrepresentation itself, and if the insurer can establish the essential elements set forth in the statute, it can avoid the contract. For example, the fact that the insurer may or may not have insured others who used marijuana is immaterial.

Stated differently, if the applicant's false statement concerns a matter which would reasonably cause the insurer to consider, either not issuing the policy because of increased risk, or issuing the policy with an increased premium, the insurer need not prove anything else. The record in this case supports the conclusion that under the facts of this case, the insurer either would not have issued the policy had it known the truth, or it would have requested a higher premium. The fact the decedent did not die from the use of marijuana is immaterial. *Jones v. Prudential Insurance Company of America, supra.*

### VI

In sum, the Court concludes that the policy of insurance was in a lapsed status at the time the decedent entered the hospital, and that the decedent had an obligation to advise the insurer of his changed circumstances. Even assuming, that the policy had not lapsed, the statements made by the decedent were false and were made to deceive the insurer. Moreover, the statements related to a material matter which affected the risk undertaken by the insurer. Based upon the above determinations, the defendant is entitled to judgment as a matter of law. In view of the above, defendant's motion for summary judgment is granted.

An appropriate Order has issued.