**BURLINGTON INSURANCE CO., Plaintiff,**

v.

**OKIE DOKIE, INC. et al., Defendants.**

**No. CIV.A. 03–2002RMU.**

United States District Court, District of Columbia.

May 2, 2005.

85

Steven M. Klepper, Balitmore, MD, for Plaintiff.

David Wilmot, Washington, DC, for Defendants.

### MEMORANDUM OPINION

DENYING THE DEFENDANT'S
MOTION TO COMPEL

URBINA, District Judge.

## I. INTRODUCTION

This matter comes before the court on defendant C.J. Thomas' ("C.J. Thomas" or "the defendant") motion to compel plaintiff Burlington Insurance Company ("Burlington") to produce documents requested in discovery. Because these documents are irrelevant to the plaintiff's negligent misrepresentation cause of action and inapposite to the defendant's possible defenses, the documents are beyond the permissible scope of discovery. Accordingly, the court denies the defendant's motion to compel.

## II. BACKGROUND

### A. Factual Background

Defendant Okie Dokie, Inc. ("Okie Dokie") is the owner and operator of Dream, an establishment in the District of Columbia described in the complaint as a nightclub. Compl. ¶¶ 8, 10. C.J. Thomas, an insurance broker, prepared an application for insurance on behalf of Okie Dokie for a

commercial general liability insurance policy. *Id.* ¶¶ 3, 23, 26. The application described Dream as a restaurant and claimed that: (1) the previous insurance carrier cancelled its policy primarily because Dream had a dance floor; (2) Dream does not sponsor "Social Events"; and (3) Dream's $4 million in total sales is comprised of $3 million food sales and $1 million in liquor sales. *Id.* ¶¶ 25, 26–30. In reliance on these statements, Burlington issued a commercial general liability policy to Okie Dokie on June 28, 2002. *Id.* ¶¶ 34, 36.

On August 10, 2002, an underaged drunk driver who had allegedly been drinking at Dream struck and killed a police officer named Hakim Farthing. *Id.* ¶ 44. Farthing's estate sued Okie Dokie for $50 million on October 1, 2002 ("*Farthing* Action"). *Id.* ¶ 46.

## B. Procedural History

On September 26, 2003, Burlington brought suit against Okie Dokie and C.J. Thomas seeking relief for expenses incurred during the ongoing *Farthing* Action. *See generally* Compl. While this suit was still pending, Burlington settled the *Farthing* Action on April 22, 2004 for $410,000. On August 2, 2004, the court denied C.J. Thomas' motion to dismiss Burlington's claim, and on September 9, 2004, in light of the settlement in the *Farthing* Action, Burlington filed an Amended Complaint specifying the amount of damages sought.

On December 8, 2004, C.J. Thomas served Burlington with a second request to produce documents. Nine days after the time allotted by Federal Rule of Civil Procedure 34 to raise objections to these document requests, Burlington objected to the requests stating that they · were overly broad, unduly burdensome, propounded for purposes of annoyance and harassment, and beyond the permissible scope of discovery. Def.'s Mot. Ex. C. On February 10, 2004, after failing to reach a resolution of the discovery dispute, C.J. Thomas filed the pending motion to compel production of the requested documents. The court now turns to that motion.

## III. ANALYSIS

### A. Legal Standard for a Motion to Compel

Rule 26(b)(1) authorizes discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P.26(b)(1). The term "relevance" is broadly construed, and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C.Cir.1997); *see also Smith v. Schlesinger*, 513 F.2d 462, 473 n. 37 (D.C.Cir.1975) (noting that "a party may discover information which is not admissible at trial if such information will have some probable effect on the organization and presentation of the moving party's case"). Put another way, "[a] showing of relevance can be viewed as a showing of need[, as] for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of a matter not relevant to the subject matter involved in the pending action." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C.Cir.1984). That said, relevancy does not encompass discovery of information with "no conceivable bearing on the case." *Id.* (citing 8 Fed. Prac. & Proc. 2d § 2008). A trial court enjoys considerable discretion over discovery matters. *Id.*; *United States v. Krizek*, 192 F.3d 1024, 1029 (D.C.Cir.1999).

■ Under Federal Rule of Civil Procedure 37(a), a party may move the court in which the action is pending for an order compelling disclosure. FED. R. CIV. P. 37(a). The party must certify that the movant has conferred in good faith with the party refusing disclosure in an effort to avoid court action. *Id.* If the court grants the motion to compel, the court "shall, after affording an opportunity to be heard, require the party ... whose conduct necessitated the motion ... to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees." *Id.* 37(a)(4); *see also* Standing Order ¶ 9. This award of expenses is intended to "deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists." *Cobell v. Norton,* 213 F.R.D. 16, 29 (D.D.C.2003) (quoting FED. R. CIV. P. 37(a)(4) advisory committee's note).

■ A court may not award Rule 37 expenses, however, if it finds, *inter alia,* that "the opposing party's nondisclosure, response, or objection was substantially justified." FED. R. CIV. P. 37(a)(4). An opposing party's objection qualifies as "substantially justified" if "there is a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *Cobell v. Norton,* 213 F.R.D. 48, 61 (D.D.C.2003); *see also* 8A FED. PRAC. & PROC. § 2288 (stating that an objection to a motion is substantially justified "if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule"); *accord Pub. Citizen Health Research Group v. Young,* 909 F.2d 546, 552 (D.C.Cir.1990) (stating, in the context of the Equal Access to Justice Act, that the question "is whether there was a reasonable basis in fact and law for the government's litigating position").

## B. The Documents Requested by the Defendant are Irrelevant to the Pending Action

The defendant proffers three reasons Burlington's guidelines, other policies, and communications with its insurance broker, Heath Insurance Brokers ("Heath"), are relevant to the pending action. First, the defendant contends that negligent misrepresentation requires materiality and therefore the plaintiff must prove that it would not have insured Okie Dokie but for the misrepresentation on the application. Second, the defendant asserts that the documents are critical to mitigate damages the plaintiff seeks. Third, the defendant contends that the plaintiff waived their objections by not raising them within the requisite time period. The court is unpersuaded by the defendant's arguments and discusses each of them in turn.

## 1. The Documents Do Not Affect Whether the Statement Materially Influenced the Plaintiff's Decision to Issue the Policy

The defendant argues that the plaintiff must demonstrate that "it would not have issued the policy at all" in order to establish the materiality of the alleged false statement and that the plaintiff presents only a "bald, unsupported representation that it would not have issued the policy for Dream" absent the false statement. Def.'s Mot. at 7; Def.'s Reply at 2. The defendant is wrong on both counts.

■ To determine whether a certain fact is material, the court determines if: (a) a reasonable man would attach importance to its existence or non-existence in determining his choice of action in the transaction in question; or (b) the maker of the representation knows or

**88**

has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

*Ward Dev. Co., Inc. v. Ingrao,* 63 Md. App. 645, 493 A.2d 421, 426 (1985) (quoting RESTATEMENT (SECOND) OF TORTS § 538 (1977)).[1] In the analogous life insurance context, the test for materiality "is whether the representation would reasonably influence the insurer's decision as to whether it should insure the applicant." *Jannenga v. Nationwide Life Ins. Co.,* 288 F.2d 169, 172 (D.C.Cir.1961). To clarify, this test does not mean, as the defendant asserts, that the influence must be dispositive as to the insurer's decision. Def.'s Mot. at 7. Indeed, in *Johnson v. Prudential Ins. Co.,* the court interpreted materiality to mean that when a "false statement concerns a matter which would reasonably cause the insurer to *consider,* either not issuing the policy because of increased risk, or issuing the policy with an increased premium, the insurer need not prove anything else." 589 F.Supp. 30, 35 (D.D.C.1983) (emphasis added).[2]

■ Based on this framework, the court begins its analysis of the specific documents requested by the defendant. The defendant first contends that Burlington's underwriting and claims guidelines are necessary to determine whether Burlington prohibited insuring nightclubs with liquor sales greater than 25% of total sales. Def.'s Mot. at 8. Whether the plaintiff's

guidelines prohibited insuring establishments that had more than 10%, 25%, 50% alcohol sales—or did not have any guidelines at all—is of no moment because the statements made by Burlington regarding the specific policy in question at the time it was issued are controlling. *Johnson,* 589 F.Supp. at 35. In *Johnson,* the court determined that in an action where an insurance company refused to pay a policy where the insured misrepresented his drug use, the fact that the insurance company may or may not have insured other individuals who used drugs was immaterial. *Id.* (noting that materiality "focuses on the misrepresentation itself", not what the insurance company has done in similar situations). Here, far from "bald, unsupported representation[s]" that it would not have issued the policy for Dream if it knew its true liquor sales, the plaintiff has provided two documents which on their face indicate that the plaintiff was not interested in pursuing or renewing the account in question if Dream's liquor receipts were higher than 25%. Def.'s Reply at 2; Def.'s Mot. Ex. E (stating that "[i]f the liquor receipts are higher than 25%, we are not interested in pursuing this account. If we discover via audit that the liquor receipts are in fact higher than 25%, we will non-renew this account"); Def's Mot. Ex. F (stating that "[l]iquor [s]ales cannot go higher than 25% of total sales, if it is discovered via audit liquor sales are higher than 25%, this policy will be non-renewed"). If there was *no*

---

**1.** Maryland authorities interpreting Maryland common law constitute "powerful precedent" when District of Columbia courts interpret District of Columbia common law because District of Columbia common law is based on Maryland common law. *Newby v. United States,* 797 A.2d 1233, 1243 n. 13 (D.C.2002)

**2.** The defendant argues that reliance on *Johnson v. Prudential Ins. Co.* is inappropriate because the *Johnson* court applied D.C.Code

Ann § 35–414 (now codified at § 31–4314), 589 F.Supp. 30 (D.D.C.1983), whereas here the cause of action in question is common law negligent misrepresentation. Def.'s Reply at 5. However, the court is unpersuaded by the defendant's argument because both § 31–4314 and negligent misrepresentation have materiality elements and, as applied to this case, implicate the materiality of a false statement in an insurance application.

evidence regarding the influence that liquor sales had on the plaintiff's decision on whether to issue a policy, evidence of the plaintiff's general practice perhaps could be relevant. However, in light of the unrebutted evidence, the insurance decisions that the plaintiff may have made with respect to other establishments is irrelevant. At a minimum, the documents clearly indicate that the plaintiff attached importance to total liquor sales and considered total liquor sales in determining whether to insure Dream. The defendant fails to cite any legal authority to support its implicit argument that the plaintiff's insurance practices with respect to other nightclubs would take precedence over or supersede the specific terms of the agreement at issue in this case. Def.'s Reply at 2–3.

The defendant next asserts that Burlington must disclose other policies they issued to determine whether other nightclubs whose liquor sales surpassed twenty-five percent were insured. For the reasons stated above, whether Burlington's general practice is consistent with their dealings with Dream is irrelevant due to the undisputed statements made by Burlington regarding the materiality of Dream's liquor sales. Finally, the defendant submits that the final category of documents, communications between Burlington and Heath (outside the communications related to the policy with Okie Dokie), are relevant only in the context of contributory negligence, discussed *infra*. Def.'s Mot. at 9. Consequently, Burlington's guidelines and other policies have "no conceivable bearing on the case." *Friedman*, 738 F.2d at 1341 (citing 8 FED. PRAC. & PROC. 2D § 2008).

## 2. The Documents do not Aid the Defendant in Mitigating Damages

Alternatively, the defendant contends that the guidelines, policies of other nightclubs, and communications with Heath are discoverable because they are central to the calculation of damages. Def.'s Reply at 3. The defendant asserts that the damages calculation should be mitigated based on theories of contributory negligence, assumption of the risk, and on the court's decision in *Max Holtzman, Inc. v. K & T Co.*, 375 A.2d 510 (D.C.1977), which restricted damages to the premium the insurer would have charged had the application been filled out truthfully. Def.'s Mot. at 6–7; Def.'s Reply at 3.

### a. Contributory Negligence

The defendant argues that contributory negligence could mitigate damages if "Burlington did not act in accordance with its own guidelines in determining whether to issue the policy[.]" Def.'s Reply at 3. Moreover, the defendant states that the communications between Burlington and Heath are critical to "establish whether Heath knew of Burlington's practices ... [because] if Burlington did not inform Heath of Burlington's practices with respect to similar establishments, contributory negligence may apply." Def.'s Mot. at 9. To succeed on a contributory negligence theory, the plaintiff must fail to act with the prudence demanded of an ordinary reasonable person under like circumstances. *Wash. Metro. Area Transit Auth. v. Cross*, 849 A.2d 1021, 1024 (D.C.2004) (citing *Stager v. Schneider*, 494 A.2d 1307, 1311 (D.C.1985)).

Here, the defendant posits no reasoning why either Heath or Burlington's failure to abide by internal guidelines results in a violation of reasonable care owed the defendant. Stated differently, the defendant provides no authority for the proposition that issuing a policy that is not in accordance with internal company guidelines could be considered negligent. Therefore, the documents are irrelevant to the defendant's contributory negligence defense.

### b. Assumption of the Risk

Next the defendant contends that these documents are relevant to an assumption of the risk defense. "Unlike contributory negligence, which stands on the fault of the plaintiff, assumption of the risk 'stands on a different theoretical footing.' " *Jarrett v. Woodward Bros.*, 751 A.2d 972, 986 (D.C.2000) (citing *Sinai v. Polinger Co.*, 498 A.2d 520, 524 (D.C. 1985)). Under assumption of the risk, "[t]he plaintiff is not barred from recovering damages because of his 'fault,' but on a theory that the plaintiff has 'consciously relieved the defendant of any duty which he otherwise owed the plaintiff. Being under no duty, the defendant may not be charged with negligence.' " *Id.* (quoting *Sinai*, 498 A.2d at 524).

As noted in the court's denial of the defendant's motion to dismiss, the insurer generally has the right to rely on statements made in an insurance application; the insurer need not conduct an independent investigation unless it has reason to doubt the statements. *See e.g., Garcia v. Aetna Cas. & Sur. Co.*, 657 F.2d 652, 655 (5th Cir.1981); *Apolskis v. Concord Life Ins. Co.*, 445 F.2d 31, 36 (7th Cir.1971); *In re EPIC Mortgage Ins. Litig.*, 701 F.Supp. 1192, 1245 (E.D.Va.1988); Couch on Insurance (Third) § 82.17 (2003). Thus, the defendant can glean nothing from Burlington's guidelines, other policies, or communications to Heath (regarding other policies) that supports the view that the plaintiff relieved the defendant of its duty to accurately complete the application. Nor has the defendant cited any legal authority to suggest otherwise. Consequently, these items are irrelevant to the assumption of the risk theory.

### c. The Defendant's Reliance on *Max Holtzman* is Misplaced

The defendant maintains that the requested documents are necessary to accurately determine the amount of recoverable damages. Def.'s Mot. at 7; Def.'s Reply at 3. To support this claim the defendant relies on *Max Holtzman*, 375 A.2d 510. However, in *Max Holtzman*, the court stated that "when an agent has the authority to bind the insurance company, and it is undisputed that the company would have accepted the risk, the company's loss is limited to the difference, if any, between the premiums paid and the premiums that would have been paid." *Id.* at 515. This test is inapplicable here because C.J. Thomas is not an agent with the authority to bind Burlington and the question of whether Burlington would have issued the policy to Okie Dokie is clearly in dispute.

Apparently recognizing the inability to strictly comply with the *Max Holtzman* rule, the defendant notes that the rule is derived from the general principle "that a party can recover only for damages proximately caused by a defendant's negligence." *Id.* In further support of extending the application of the rule, the defendant cites the court's reliance on *Max Holtzman* in *Home Mut. Ins. v. Broadway Bank and Trust*, 100 Misc.2d 228, 417 N.Y.S.2d 856, 862 (1979). While *Home Mutual* applies the rule to an insured's broker rather than an insurer's broker, the case is distinguishable because the court found that the insurer would have remained liable for damages and not cancelled the policy despite the broker's negligence. *Id.* Therefore, the court held that although the insured's broker was negligent in canceling the policy, the broker only had to return the premium refunded to it after the ineffective cancellation. *Id.*

Both the holdings in *Home Mutual* and in *Max Holtzman* are based on the finding that an insurer would have unequivocally

remained liable for damages under a policy despite the negligent acts of another. *See Max Holtzman,* 375 A.2d at 515; *see also Home Mut.,* 417 N.Y.S.2d at 862. This fact has not been determined in the present case, and the court refuses to expand the holdings in *Max Holtzman* and *Home Mutual* to cases in which this issue remains unresolved. Accordingly, the defendant's reliance on the *Max Holtzman* rule is misplaced at this stage of the proceedings.

### C. The Plaintiff Did Not Waive its Right to Object

It is undisputed that the plaintiff failed to timely respond to the defendant's document requests. Def.'s Mot. at 11; Pl.'s Opp'n at 11–12. The court, however, declines to bar the plaintiff from asserting its objections to the discovery requests. The defendant will suffer no prejudice by this delay, and the plaintiff has not demonstrated a pattern of misconduct that would warrant the relatively harsh punishment sought at this stage. *Blumenthal v. Drudge,* 186 F.R.D. 236, 240 (D.D.C.1999) (holding that a plaintiff did not waive his right to object to discovery requests because the five or nine day delay was not prejudicial nor was there a pattern of misconduct). The plaintiff is reminded, however, that the court's time schedules are not merely suggestions but are rules to be strictly followed for the preservation of an efficient and equitable judicial process. Any abuse of the court's patience today will not be tolerated in the future.

### D. The Court Declines to Sanction the Defendant.

Finally, pursuant to Federal Rule of Civil Procedure 37(a)(4) and the court's civil standing order, the court may sanction the losing attorney. On one hand, the court cannot say that the defendant's position was substantially justified, as evidenced by the defendant's failure to cite

legal authority that would justify many of the reasons for which discovery was sought (i.e. contributory negligence, assumption of the risk). But, in light of counterbalancing procedural violations by the plaintiff, the court concludes that the interests of justice do not warrant awarding expenses to plaintiff's counsel.

### IV. CONCLUSION

For the foregoing reasons, the court denies the defendant's motion to compel documents from the plaintiff. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 2nd day of May, 2005.